Marvyn GOULD, Executor of the Estate of J. Donald Rogasner, and J. David Pincus, on behalf of themselves and all others similarly situated, Plaintiffs,

Mary S. McCord and Charles T. McCord, Jr., Intervening Plaintiffs,

v.

AMERICAN HAWAIIAN STEAMSHIP COMPANY et al., Defendants.

Civ. A. No. 3707 to 3722.

United States District Court,
D. Delaware,
Wilmington Division.

Aug. 17, 1973.

William Prickett and Rodman Ward, Jr., Prickett, Ward, Burt & Sanders, Wilmington, Del., Harold E. Kohn, Aaron M. Fine and Stephen E. Haberfield, Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiff Gould and all those similarly situated and for intervening plaintiffs.

Samuel F. Keil, Keil & Keil, Wilmington, Del., for plaintiff Pincus.

S. Samuel Arsht and William O. La-Motte, III, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Richard E. Nolan, Christopher Crowley and Arthur F. Golden, Davis, Polk & Wardwell, New York City, for defendant R. J. Reynolds Tobacco Co.

David F. Anderson and Richard F. Corroon, Potter Anderson & Corroon, Wilmington, Del., John W. Castles, III, Michael J. Murphy, Lord, Day & Lord, New York City, for defendants American Hawaiian Steamship Co., National Bulk Carriers, Inc., Daniel K. Ludwig and Hal A. Kroeger.

R. Franklin Balotti, Richards, Layton & Finger, Wilmington, Del., W. Foster Wollen, Shearman & Sterling, New York City, for defendants Malcolm P. McLean, James K. McLean, Clara L. McLean, Disque D. Deane, Edward A. Hirs, James T. Murff and Beverly R. Wilson, Jr.

Howard M. Handelman, Bayard, Brill & Handelman, Wilmington, Del., James V. Ryan, Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, for the defendants Litton Industries, Inc., Monroe International Corp. Retirement Plan Trust, and Joseph T. Casey.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is a class action suit brought by shareholders of McLean Industries, Inc. (McLean) alleging violations of the Securities Exchange Act of 1934 (the 1934 Act), §§ 10(b) and 14(a), 15 U.S.C. §§ 78j(b) and 78n(a) arising in the course of McLean's proxy solicitation for shareholder approval of its merger into the R. J. Reynolds Tobacco Company (Reynolds).

In an earlier opinion, the Court held that the challenged proxy statement was materially false and misleading and granted summary judgment on the question of liability under § 14(a) against four of the individual defendants and the surviving corporation. See 331 F. Supp. 981. Subsequent to this decision, a settlement of all claims presented in the complaint was agreed upon between the plaintiffs and certain of the defendants and was approved by the Court on April 30, 1973.

The case is presently before the Court on the question of the liability of the defendants Litton Industries, Inc. (Litton) and Monroe International Corporation Retirement Plan Trust (Monroe) for the materially false and misleading proxy statement and for alleged violations of their common law responsibilities, and the liability of Joseph T. Casey (Casey) for alleged violations of his federal and common law fiduciary responsibilities as a director of McLean.[1] In addition, the Court is confronted with the question of damages for which any of the three defendants (non-settling defendants) are liable.

The facts have been developed in some detail in the previous opinion,[2] and will

---

1. Casey was one of the individuals previously determined to be liable under § 14(a) for the materially defective proxy materials.

2. 319 F.Supp. 795; 331 F.Supp. 981; 55 F.R.D. 575; 351 F.Supp. 853.

not be reiterated herein except insofar as they are pertinent to the issues before the Court. In their post-trial brief, the non-settling defendants proposed numerous factual findings which were, in the Court's opinion, irrelevant to the issues of liability and damages,[3] and which will, therefore, not be discussed in this opinion.

## LIABILITY OF LITTON AND MONROE

The plaintiffs contend that Casey was Litton's representative or agent on the McLean Board of Directors acting in Litton's and Monroe's interests. Litton and Monroe are, therefore, allegedly liable for Casey's acts and violations under a number of theories; e. g. agency, deputization, controlling persons (§ 20(a) of the 1934 Act); and as aiders and abettors. The defendants argue that the evidence establishes that Casey was not an agent of Litton on the McLean Board and served on that board independently of Litton's influence and interests.

The Court is of the opinion that in relationship to the matters relevant to the merger, e. g. Litton's acceptance of and insistence upon $50.00 and the examination and approval of the proxy materials, the actions pertinent to this litigation, Casey was Litton's and Monroe's representative on the McLean Board. The record evidences that through the course of the merger negotiations, Casey was the only Litton employee consulted relative to Litton's position concerning approval of the merger and accepting $50.00 in cash. Certainly Malcolm McLean and other McLean personnel viewed Casey as Litton's representative. E. g. Tr. 136–138. Moreover, in light of John B. Cogan's role on the McLean Board, the reasons for the termination of the voting trust, Litton's policies regarding membership on the Boards of Directors of other corporations, and the manner of Casey's election, acceptance of other than the conclusion that Casey was the Litton "influence" on the McLean Board and charged with looking out for and protecting Litton's interests is not possible. In the same context, Casey was solely responsible for Monroe's decision to accept the $50.00 and the only official of Monroe consulted by McLean, and therefore, was also Monroe's agent for the matters involved herein. Also, immediately prior to the May 13, 1969 shareholder meeting to approve the merger, Casey spoke for Litton and Monroe by indicating that neither would be willing to take less than $50.00 per share. Tr. 150–152.

In addition, Casey and Kendall Clark Simpson (Simpson), an attorney for Litton and Monroe, were the Litton personnel responsible for articulating Litton's concerns and protecting its interests. Both men were involved in certain aspects of the merger negotiations, i. e.,

---

3. The non-settling defendants have cross-claimed against the remaining defendants for contribution and indemnification, however, their claims have been deferred until resolution of the issues presented herein. Numerous of the requested factual findings appear pertinent to the severed issues, e. g. the knowledge of the settling defendants and agents of McLean. Also, the non-settling defendants have requested factual findings which are relevant to the question of the initial summary judgment and the materiality of the misstatements and omissions cited therein and the question of Casey's liability for same, e. g. the chronology of the approval of the proxy materials and the nature of the defendants' "agreement" to vote. These latter questions are matters which have been raised previously by these defendants subsequent to the entry of summary judgment. The Court has discussed the questions in two opinions while rejecting their efforts to alter the initial summary judgment, and the Court adheres to and adopts the conclusions and reasoning expressed in these opinions.

The facts developed at the trial demonstrated that, at best, Casey, a director of McLean and a representative of a shareholder which was receiving a form of compensation not being offered to other shareholders, approved a draft form of the proxy materials containing three of the four material defects and received a copy of the final materials containing all the defects and did nothing to correct the deficiencies.

the treatment of LILC and the banks, on behalf of Litton. Casey was advised concerning the propriety of his actions by Litton counsel and other personnel.

■■ Casey was provided with and approved the use of draft forms of the proxy materials. His lack of any present recollection of the discussion of the proxy materials at the March 20, 1969 directors' meeting does not conflict with or in any way serve to refute Armbrecht's testimony concerning that discussion. At the time of the approval of the draft proxy materials and subsequently when he received the final version, Casey was Litton's and Monroe's agent on the McLean Board for purposes of the merger and was, at least with Simpson's assistance, their representative for approving and acquiescing in the inclusion of the materially defective characterizations of Litton's and Monroe's obligations, agreements and their role in negotiating the sale.

Under these circumstances, Litton and Monroe are liable for the § 14(a) proxy violations. Section 14(a) makes it illegal to permit the use of one's name to solicit a proxy in contravention of the SEC rules and regulations. Whatever the parameters of that prohibition, it clearly covers the situation herein where Litton and Monroe through their agent Casey permitted the dissemination of a proxy statement containing statements which were materially false and misleading in their characterization of Litton and Monroe, which dealt directly with the dual treatment afforded the McLean shareholders, and which permitted Litton and Monroe to obtain a premium for their shares while precluding other McLean shareholders from adequately apprising themselves of the status of the merger and of these defendants or the complete nature of the merger terms.

In light of this conclusion, the Court will not discuss the plaintiffs' alterna-tive grounds for holding Litton and Monroe liable under § 14(a).

■ The plaintiffs have not sufficiently established their remaining claims against these defendants. The claim based on a breach of a federal fiduciary law by reason of Casey's failure to obtain $50.00 per share for all shareholders is not supported by the cases relied on by the plaintiffs. Although it is clear that the 1934 Act creates fiduciary relationships and obligations of corporate directors and establishes a separate and distinct substantive federal law, see Supt. of Insurance v. Bankers Life and Casualty Co., 404 U.S. 6, 12–13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); SEC v. Capital Gains Bureau, Inc., 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963) and McClure v. Borne Chemical Company, Inc., 292 F.2d 824, 834 (3rd Cir. 1961), the Act does so only in the areas it purports to regulate. Erling v. Powell, 429 F.2d 795 (8th Cir. 1970) and Review 71 v. Alloys Unlimited, Inc., 450 F.2d 482 (10th Cir. 1971). Claims of corporate mismanagement remain matters of state law except when they directly violate the SEC rules and regulations under the 1934 Act. *Id.* The claim of an alleged violation of federal ficuciary law by Casey's negotiating for separate treatment for Litton and Monroe does not appear to violate said rules and regulations and is, therefore, not cognizable under the 1934 Act.[4]

## DAMAGES

Having concluded that Litton and Monroe, as well as Casey, are liable for the materially false and misleading proxy statement, the Court is confronted with the question of the appropriate damages.[5] The plaintiffs raise two basic alternative theories of recovery: (1) the proxy statement created a reasonable expectancy that the Reynolds Convertible Preferred Stock would be worth $50.00,

4. The claim that Casey breached his federal fiduciary obligations by approving a materially defective proxy statement is, of course, duplicative of the § 14(a) viola-tion for which he has already been determined to be liable.

5. The merger has been consummated, and the plaintiff is not seeking recession.

and the class is entitled to the difference between that amount and the value of the security when actually issued; and (2) the defendants received a premium for their shares which they would not have received but for the merger, and should be required to compensate the plaintiffs for, at least, a proportionate share of that premium. The defendants argue that the plaintiffs have, through a pre-trial stipulation on damages, conclusively conceded that the deficient proxy materials did not cause any pecuniary loss to the plaintiff class. Contending that recovery for violations of the 1934 Act is limited to actual or "out-of-pocket" damages, see § 28(a) of the 1934 Act, see Kohler v. Kohler Co., 208 F. Supp. 808 (E.D.Wis.1962), aff'd, 319 F. 2d 634 (7th Cir. 1963), the defendants maintain that such a concession precludes any judgment against them for damages. In addition, citing Justice Harlan's discussion in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386–389, 90 S.Ct. 616, 622–624, 24 L.Ed.2d 593 (1969), the defendants assert that none of the material deficiencies in the McLean proxy materials related to the terms of the merger and therefore, the plaintiffs can recover damages "only if the merger resulted in a reduction of the earnings or earnings potential of their holdings" and then "only to the extent that [such damages] can be shown." Id. See also Dasho v. Susquehanna Corp., 461 F.2d 11, 31 (7th Cir. 1972), cert. denied, 408 U.S. 925, 92 S.Ct. 2496, 2498, 33 L.Ed.2d 336 (1972).

█ The Court cannot agree that the proxy statement was materially defective in that the McLean shareholders were deceived into believing that they were receiving a security worth $50.00. Nor was it deficient in failing to advise the shareholders that the stock might not be worth $50.00 in light of the chronology of the merger and the existence of the alternative merger terms initially proffered and subsequently rescinded for tax reasons. The proxy statement makes no reference to any estimated or probable value for the Rey-

nolds security. Moreover, under the SEC rules, see Reg. § 240.14a–9, Note (a), and the case law, e. g. Kohn v. American Metal Climax, Inc., 458 F.2d 255 (3rd Cir. 1972), cert. denied, 409 U. S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972), valuation predictions are generally not permitted and are frequently considered to be per se examples of misleading statements. In spite of the background of the McLean-Reynolds merger negotiations, inclusion of an admonition that an as yet unissued share of stock might not be worth $50.00 would not be necessary and could not have been material to a reasonable shareholder.

█ Contrary to the defendants' assertions, the plaintiffs have not conceded that they suffered no monetary loss by reason of the consummation of the merger under the approved terms. While the plaintiffs have stipulated that the Reynolds preferred had an intrinsic value of no less than the intrinsic value of the McLean security given up, this is not a concession that no damages were suffered. The defects in the proxy materials were all directly related to the dual treatment afforded to the "favored defendants" who received $50.00 per share and to the remaining shareholders who received a share of Reynolds preferred. The materials inaccurately characterized the reasons for the difference, the status of the favored defendants, and the negotiation procedure. The shareholders were not adequately or accurately apprised of the factors relevant to ascertain the appropriateness of any premium and the necessity for the disparate treatment. As a consequence of the proxy defects, the shareholders were never afforded the opportunity to share in the premium received by the favored defendants. Moreover, the fact that the favored defendants were able to obtain $50.00 per share, or evidently substantially above the intrinsic value of the McLean security, and certainly more than the initial market value of the Reynolds preferred, demonstrates that in the merger context when an absorption

or take-over is sought stock can frequently command higher prices than those obtained on ordinary sales.

Arguments by the defendants that any premium received by them for their substantial block of stock was entirely permissible under the common law [6] are unavailing. The deficiency in the instant case arises in the proxy mechanism, the procedure for insuring informed corporate sufferage. Regardless of the legality of a premium, the proxy statement failed to elucidate the salient facts and considerations pertinent to the premium, and eliminated any opportunity for an informed evaluation of the premium.

Although it is entirely possible that full disclosure and correction of the material defects would not have affected the terms of the merger and that the favored defendants could have insisted on receiving $50.00 to vote for and approve the merger, it is similarly equally possible that full disclosure might have resulted in a sharing of the premium.[7] In the opinion of the Court, the defendants, as parties responsible for the accuracy of the proxy materials and responsible for the material defects, should bear the risk of the above uncertainty, and it would be unfair to require the plaintiff to prove that they would have obtained a greater compensation. See generally Moses v. Burgin, 445 F.2d 369, 384 (1st Cir. 1971), cert. denied, 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971) and Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir. 1971), cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971).

The defendants' reliance on the *Mills* dictum to support their contention that the plaintiffs are not entitled to damages is unfounded. Although the defects are not related to the terms of the merger in the strictest sense of misstating what the shareholders were going to receive, they were directly relevant to the dichotomy between what the favored defendants and the remaining shareholders were to receive. The Supreme Court specifically stated that its statements in *Mills* were not to be treated as exhaustive or exclusive and they have not been so read. See Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281 at 1298 (2nd Cir. 1973).

The fundamental consideration in the question of damages remains the policy enunciated by the Supreme Court in J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964), "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." This principle has resulted in a wide range of relief reflecting the flexibility of equity jurisdiction. See Gottlieb v. Sandia American Corp., 452 F.2d 510, 516 (3rd Cir. 1971), cert. denied, 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971); Drachman v. Harvey, 453 F.2d 722, 729 (2nd Cir. 1972); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103–1104 (2nd Cir. 1972). Once a merger has been consummated by means of a materially defective proxy statement, it is impossible to conclusively determine the consequences of the defect or the effect of its deletion or correction. In the related area of damages recovered by a defrauded seller for violations of § 10(b), courts have been willing to assume that the seller would have retained the stock and is therefore entitled to any price increase to that stock,

---

6. This is especially true in light of the fact that immediately before the shareholders' meeting to approve the merger, the favored defendants rejected the suggestion that they reduce the amount of compensation they were to receive to less than $50.00 in spite of the adverse stock market trends and concomitant detrimental effect on the market value of the Reynolds preferred.

7. This possibility is especially pertinent in light of Casey's statement regarding his probable recommendation to the Litton Board that it ought to take less than $50.-00 if the merger was contingent on that occurrence. Tr. 398–399.

see Myzel v. Fields, 386 F.2d 718, 747 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968) and Janigan v. Taylor, 344 F.2d 781, 786–787 (1st Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L. Ed.2d 120 (1965).

 The Court is of the opinion that under considerations of equity, the plaintiffs are entitled to participate in any premium obtained by the favored defendants. However, certain of the defendants, including some of those receiving $50.00 per share, have settled their claims and received releases from the plaintiffs' claims. This raises questions regarding the extent of the non-settling defendants' liability for the premium. The defects permitted all of the favored defendants to receive a premium on all shares exchanged for $50.00. However, the existence of the settlement, and the admonition against imposing punitive damages for securities law violations, see Mills v. Electric Auto-Lite Co., supra, and Gerstle v. Gamble-Skogmo, Inc., supra at 1304 of 478 F.2d, convince the Court that the non-settling defendants should only be liable for the premium which they actually received and should be required to disgorge the share of the premium received by reason of the merger which is proportionate to the percentage of former McLean shareholders who are in the plaintiff class, approximately 25% of the total premium.

 The Reynolds preferred will be valued on the basis of its market price immediately after being issued on the first day of trading on May 15, 1969. See e. g. United States v. Cartwright, 411 U.S. 546, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973). The cases relied on by the defendants in support of their contention that the appraised value of the stock is the appropriate measure of value are readily distinguishable since in both cases there was an inadequate market for the security. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1971),

and Gottlieb v. Sandia American Corp., 304 F.Supp. 980 (E.D.Pa.1969), aff'd, supra. The average price on May 15, 1969, was $41.75 and therefore, the premium received by the non-settling defendants was $8.25 per share for the total of 1,050,000 shares owed by Litton and Monroe, a total premium of $8,662,-500.00.

The plaintiffs will not be awarded pre-judgment interest.

For the reasons enumerated above Litton and Monroe are liable under § 14(a) for the materially defective proxy materials. In addition, Litton, Monroe and Casey are liable for damages equivalent to the plaintiff class's proportionate share of the $8.25 premium per share received by these defendants, or approximately $2,165,625.00.[8]

Submit order.

---

8. This figure will depend on the ultimate size of the class.