**Marvyn GOULD, Executor of the Estate of J. Donald Rogasner, and J. David Pincus, on behalf of themselves and all others similarly situated, Plaintiffs,**

**Mary S. McCord and Charles T. McCord, Jr., Intervening Plaintiffs,**

v.

**AMERICAN–HAWAIIAN STEAMSHIP COMPANY et al., Defendants.**

**Civ. A. Nos. 3707 and 3722.**

United States District Court, D. Delaware.

Dec. 19, 1974.

---

William Prickett and Rodman Ward, Jr., Prickett, Ward, Burt & Sanders, Wilmington, Del., Aaron M. Fine, Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiff Gould and all those similarly situated and for intervening plaintiffs.

David S. Keil, Keil & Keil, Wilmington, Del., for plaintiff Pincus.

Pomerantz, Levy, Haudek & Block, New York City, for defendants American-Hawaiian Steamship Co., National Bulk Carriers, Inc., Daniel K. Ludwig and Hal A. Kroeger.

S. Samuel Arsht, William O. La-Motte, III, and A. Gilchrist Sparks,

Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant R. J. Reynolds Tobacco Company.

David F. Anderson and Richard F. Corroon, Potter, Anderson & Corroon, Wilmington, Del., for defendants American-Hawaiian Steamship Company, National Bulk Carriers, Inc., Daniel K. Ludwig and Hal A. Kroeger.

R. Franklin Balotti, Richards, Layton & Finger, Wilmington, Del., W. Foster Wollen, Shearman & Sterling, New York City, for defendants Malcolm P. McLean, James K. McLean, Clara L. McLean, Disque D. Deane, Edward A. Hirs, James T. Murff and Beverly R. Wilson, Jr.

Howard M. Handelman, Bayard, Brill & Handelman, Wilmington, Del., James V. Ryan and Kenneth Shanks, of Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, for the defendants Litton Industries, Inc., Monroe International Corporation Retirement Plan Trust, and Joseph T. Casey.

OPINION

CALEB M. WRIGHT, Senior District Judge.

On September 17, 1971, this Court held that the McLean Industries ("McLean") proxy solicitation for shareholder approval of its merger into the R. J. Reynolds Tobacco Company ("Reynolds") was materially false and misleading in violation of § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). The Court granted partial summary judgment in favor of the plaintiff class against four of the individual defendants and against Reynolds, the surviving corporation. 331 F.Supp. 981. On April 30, 1973, this Court approved a settlement agreed upon by the plaintiffs [1] and certain of the defendants.[2] On August 17, 1973, this Court

[1]. The plaintiff class is composed of all holders of McLean common stock on May 13, 1969, who did not request exclusion, other than certain "favored" shareholders who received a premium as a result of the merger.

[2]. The settling defendants are: American-Hawaiian Steamship Company, National Bulk Carriers, Inc., McLean Industries, Inc., R. J. Reynolds Tobacco Company, Malcolm P. McLean, Clara L. McLean, Disque D. Deane, Edward A. Hirs, Hal A. Kroeger, Daniel K. Ludwig, James K. McLean, James T. Murff, and B. R. Wilson, Jr.

held that the non-settling defendants, Litton Industries, Inc., Monroe International Retirement Plan Trust, and Joseph T. Casey, collectively known as the Litton defendants,[3] liable to the plaintiff class for the materially false and misleading proxy statement, and the Court devised a formula for appropriate damages. 362 F.Supp. 771. In an unreported decision of June 28, 1974, this Court rejected certain of the Litton defendants' objections to the entry of judgment, but reserved decision on their claim for a set-off, or a reduction of the judgment against them.

Presently before the Court are (1) the Litton defendants' cross claims for indemnification from certain of the settling defendants and for contribution from all of the settling defendants; (2) Reynolds' counterclaim for indemnification or contribution from the Litton defendants; and (3) the reserved claim by the Litton defendants for a set-off.

*Indemnity*

The parties seeking indemnity ask this Court to shift their entire expenses arising out of this litigation to those with allegedly greater culpability.[4] The Litton defendants claim that Casey, who, together with other members of the McLean Board of Directors, delegated the responsibility of preparing the proxy materials to Malcolm McLean and others, is substantially less culpable than those who actually prepared the defective materials. The Litton defendants' claim for indemnity is asserted against McLean, Reynolds as successor to Mc-

Lean, Malcolm P. McLean, Clara L. McLean, National Bulk Carriers, Inc., American-Hawaiian Steamship Company, Daniel K. Ludwig, and Hal A. Kroeger. Reynolds' indemnity counterclaim, on the other hand, contends that Casey is a wrongdoing agent who must indemnify his principal, McLean, and its successor, Reynolds, for his wrongful approval of the defective proxy materials.

All parties take the position that indemnification is available in certain circumstances to litigants found liable under § 14. The 1933 and 1934 Securities Acts, however, contain no specific language relating to indemnity, and the matter is not free from doubt.[5]

This Court is aware of only one case discussing the availability of indemnity to those found liable for a violation of § 14(a) of the Securities Exchange Act. In Sherlee Land v. Commonwealth United Corporation, CCH Fed.Sec.L.Rep. ¶ 93,749 (S.D.N.Y. January 16, 1973), a case involving, *inter alia*, claims under § 14(a), the court denied a motion by one of the defendants for leave to file a cross claim for indemnity stating, "The Court, mindful of public policy embodied in Federal Securities legislation and of the public faith reposed in public accounting firms, is doubtful that third party plaintiff is entitled to indemnity." *Id.* at 93,274. The extent to which this opinion rests on considerations particular to § 14(a), however, is unclear.

Several courts have ruled on claims for indemnity for liability [6] under other sections of the Securities Acts, particularly §§ 10(b) and 17(a), 15 U.

---

3. Litton and Monroe were favored shareholders of McLean; Casey was an officer of both and their designate on the McLean Board of Directors. See 362 F.Supp. at 774–775.

4. The parties are not seeking to enforce pre-existing indemnity contracts, but rather seek indemnity as a matter of common law.

5. Contribution, on the other hand, is referred to expressly in § 11 of the 1933 Act, 15 U.S.C. § 77k, and in §§ 9 and 18 of the 1934 Act, 15 U.S.C. §§ 78i and 78r.

6. In Koch Industries, Inc. v. Vosko, 494 F.2d 713 (10th Cir. 1974), the court awarded indemnity to a non-negligent party for legal expenses incurred in successfully defending a securities action. Reimbursement of successful defendants, however, involves significantly different issues than indemnification of those who have been found liable. 3 Loss, Securities Regulation 1830–31 (2d Ed. 1961).

S.C. §§ 78j(b) and 77q(a).[7] Some courts have held that indemnity is available to those whose participation in a fraudulent scheme has been only "passive", "secondary", or whose liability attaches only "as a matter of law". Thomas v. Duralite Co., Inc., 386 F. Supp. 698 (D.N.J.1974); deHaas v. Empire Petroleum Co., 286 F.Supp. 809 (D.Colo.1968), modified on other grounds, 435 F.2d 1223 (10th Cir. 1971); Handel-Maatschappij v. Faradyne Electronics Corp., 37 F.R.D. 357 (S.D.N.Y.1964). Other courts have held that indemnity is not available to one who is guilty of "more than ordinary negligence" or whose conduct is as culpable as that of the proposed indemnitor. Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969), affirming, 287 F.Supp. 188 (S.D.N.Y. 1968), cert. denied, 397 U.S. 913, 90 S. Ct. 913, 25 L.Ed.2d 93 (1970); Kuehnert v. Texstar Corp., 412 F.2d 700, 705 n. 7 (5th Cir. 1969) (dictum); Herzfeld v. Laventhol, Krekstein, Horwath & Horwath, 378 F.Supp. 112 (S.D.N.Y. 1974); Tucker v. Arthur Andersen & Co., CCH Fed.Sec.L.Rep. ¶ 94,955 (S.D. N.Y. April 25, 1974); State Mutual Life Assurance Co. v. Arthur Andersen & Co., CCH Fed.Sec.L.Rep. ¶ 94,543 (S.D. N.Y. September 28, 1972); State Mutual Life Assurance Co. v. Peat, Marwick, Mitchell & Co., 49 F.R.D. 202 (S.D. N.Y.1969); deHaas v. Empire Petroleum Co., *supra.* In two cases, courts have deferred ruling on the availability of indemnity until the relevant facts were established, Getter v. R. G. Dickinson & Co., 366 F.Supp. 559 (S.D.Iowa 1973); Altman v. Liberty Equities Corp., 54 F.R.D. 620 (S.D.N.Y.1972), but in the former case, the court suggested that indemnity might not be allowed even in a case of ordinary negligence. 366 F.Supp. at 569.

In short, most of the cases on indemnity under the Securities Acts can be read to support the proposition that an unsuccessful defendant may obtain indemnity from one significantly more responsible for the injury to the plaintiff. See generally, Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification and Contribution, 120 U.Pa.L.Rev. 597 (1972) (hereafter cited as Ruder). This indemnification doctrine, however, was developed in § 10(b) and § 17(a) cases, where the gravamen of the wrongdoing is fraudulent and intentional conduct,[8] and is not necessarily applicable to indemnity under § 14(a). It may be that one joint tortfeasor whose conduct has been of limited culpability should be entitled to shift his loss to another joint tortfeasor whose conduct has been deliberately fraudulent in cases arising under sections of the Securities Acts prohibiting fraud. Shifting liability to the more culpable tortfeasor in such cases may adequately serve the deterrent purposes of those sections. But § 14(a) reaches negligent as well as deliberately deceptive conduct, 351 F.Supp. at 860, and the considerations governing indemnity thereunder are, accordingly, somewhat different.

■ It is well established that the purpose of § 14(a) is regulatory, not compensatory. The Supreme Court has held:

> The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation. The section stemmed from the congressional belief that "[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange." H.R.Rep. No. 1383, 73d Cong., 2d Sess., 13. It was intended to "control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses

---

7. Indemnity in securities cases, like contribution, is a matter of federal law. Cf., Altman v. Liberty Equities Corp., 54 F.R.D. 620, 625 (S.D.N.Y.1972); Globus v. Law Research Service, Inc., 318 F.Supp. 955, 958 n. 2 (S.D.N.Y.1970), aff'd, 442 F.2d 1346 (2d Cir. 1971).

8. See 351 F.Supp. at 858–65.

**168**

which . . . [had] frustrated the free exercise of the voting rights of stockholders." *Id.* at 14. "Too often proxies are solicited without explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." S.Rep. No. 792, 73d Cong., 2d Sess., 12 These broad remedial purposes are evidenced in the language of the section . . . . J. I. Case Co. v. Borak, 377 U.S. 426, 431–432, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). Thus, the question of who pays the damages to the plaintiffs is of as great concern as the issue of whether the plaintiffs are compensated at all.[9] To allow indemnity to those who have breached responsibilities squarely placed upon them by the statute would vitiate the remedial purposes of § 14(a).[10] Only a realistic possibility of liability for damages will encourage due diligence by those who solicit proxies and will protect the interest of informed corporate suffrage. Consequently, even if one concurrent tortfeasor bears greater responsibility for preparation or approval of false or misleading proxy materials, a person who breaches § 14(a) duties should not thereby be entitled to indemnity.[11]

■ In view of this conclusion, it is not necessary for this Court to determine the relative culpability of the parties involved. Both Casey, through whom the Litton defendants claim indemnity, and Reynolds, as successor to McLean, were held liable for the material misrepresentations and omissions of the McLean proxy materials. 331 F. Supp. at 998, 351 F.Supp. at 858, 868. The liability of McLean, for which Reynolds is responsible, was not simply as "principal" responsible for the actions of the corporate directors as "agents", but was rather as a "person" soliciting proxies in violation of the statute. 331 F.Supp. at 998; 15 U.S.C. § 78c(a)(9). Whatever the culpability of the proposed indemnitors in this case, neither the Litton defendants, whose liability arose from Casey's negligence, nor Reynolds, as successor to McLean, is entitled to indemnity.[12]

### Contribution

■■ Contribution entails distributing losses among tortfeasors by requiring each to pay his proportionate share of the damages.[13] "In essence, contribution results in a sharing of the burden, whereas indemnity results in shifting it." Ruder, *supra*, at 647. It is significant that those sections of the 1933 and 1934 Acts that explicitly create a civil

---

9. Cf., Douglas & Bates, The Federal Securities Act of 1933, 43 Yale L.J. 171, 216 (1933).

10. For example, this Court has held: "To exonerate a director for his failure to peruse the very materials the accuracy of which is his legal responsibility would effectively emasculate the proxy provisions." 351 F. Supp. at 868. If a director who fails to read the proxy materials he approves may obtain full indemnity from concurrent tortfeasors, what incentive is there for a director to comply with his statutory responsibility?

11. It is noteworthy that several commentators take the position that indemnity should not be available to those found liable under § 11 of the 1933 Act, which is in some respects analogous to § 14(a) and which imposes liability for negligence. See 351 F. Supp. at 863, n. 12. The commentators conclude that indemnification is hostile to the deterrent purposes of the statutory provision. 3 Loss, Securities Regulation, Note 6, *supra*, at 1831; Note, Indemnification of Directors: The Problems Posed by Federal Securities and Antitrust Legislation, 76 Harv.L.Rev. 1403, 1420 (1963); Note, Indemnification of Underwriters and Section 11 of the Securities Act of 1933, 72 Yale L. J. 406 (1962).

12. This result could also be expressed as a ruling that those seeking indemnity are *in pari delicto* with their proposed indemnitors because both breached responsibilities under § 14(a). See generally, Ruder, *supra*, at 659–664. However, viewing the result as a limitation on the availability of indemnity to certain securities law violators may be preferable. See, Kuehnert v. Texstar, 412 F.2d at 705–706 (Godbold, J., dissenting).

13. Contribution in securities cases is governed by federal law. See, note 7, *supra*.

cause of action all provide *for contribution* among those found liable.[14] As the court stated in deHaas v. Empire Petroleum Co.:

. . . those sections of the Securities Exchange Act which expressly provide for civil liability contain express provisions for contribution among intentional wrongdoers.ⁱ [Citing § 11 of the 1933 Act and §§ 9 and 18 of the 1934 Act.] Since the specific liability provisions of the Act provide for contribution, it appears that contribution should be permitted when liability is implied under Section 10(b). III Loss, Securities Regulation 1739–40, n. 178 (1961). 286 F. Supp. at 815–816.

Accord, Liggett & Myers, Inc. v. Bloomfield, 380 F.Supp. 1044 (S.D.N.Y.1974); Herzfeld v. Laventhol, 378 F.Supp. at 135; Altman v. Liberty Equities Corp., 54 F.R.D. at 625; Globus v. Law Research Service, Inc., 318 F.Supp. at 958.

Unlike indemnity, contribution would not interfere with the regulatory purpose of § 14 of the 1934 Act. On the contrary, the availability of contribution would tend to insure that all individuals jointly liable for a violation of § 14(a) would have some responsibility for damages. Where, for example, a single joint tortfeasor satisfies the full judgment in favor of the plaintiff, the availability of contribution will allow him to recover appropriate shares from the remaining tortfeasors. Were contribution not available, those found liable for breach of a statutory obligation might escape liability as effectively as if they were entitled to indemnity.[15]

Traditionally, there was no right of contribution among tortfeasors, Union Stock Yards Co. v. Chicago, B. & Q. R. Co., 196 U.S. 217, 25 S.Ct. 226, 49 L.

Ed. 453 (1905), and the Third Circuit adopted this principle in an antitrust case. Goldlawr, Inc. v. Shubert, 276 F. 2d 614, 616 (3d Cir. 1960); see also, Dunn v. Beech Aircraft Corp., 271 F. Supp. 662, 664 (D.Del.1967). However, in Gomes v. Brodhurst, 394 F.2d 465 (3d Cir. 1968), a negligence action, the Court of Appeals rejected the traditional prohibition on contribution as contrary to "reasoned fairness":

There is no longer, a legitimate place in our system, if, indeed, there ever was, for a rule of law which places the full burden of restitution upon one who is only in part responsible for a plaintiff's loss. Such a philosophy stems from a more ancient day which more easily intermingled penal and compensatory considerations. See generally, Prosser, Torts § 47 (3d ed. 1964). 394 F.2d at 467–68.

The *Gomes* decision is consistent with the recent trend in the law favoring contribution. See Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir., 1974); Globus v. Law Research Service, Inc., 318 F.Supp. at 957–958. In short, recent developments in the common law of contribution, as well as the text and policies of the Securities Acts, militate in favor of the availability of contribution under § 14(a) of the 1934 Act. Consequently, this Court has no difficulty concluding, as a general proposition, that contribution is available to concurrent wrongdoers in § 14(a) cases. Sherlee Land v. Commonwealth United Corp., *supra*, at 93,274.

A more difficult question than the availability vel non of contribution is the proper measure of contribution to be applied in this case. The Litton defendants seek contribution from all of the settling defendants on the ground that

---

14. Of course, express provisions in the Securities Acts do not automatically govern implied causes of action under the Acts. McClure v. Borne Chemical Co., Inc., 292 F.2d 824, 836–837 (3d Cir. 1961).

15. The court in *Globus v. Law Research Service, Inc.,* using similar reasoning, refused to allow joint tortfeasors effectively to "nullify their 'liability for compensatory damages' by leaving the whole of the burden to the more prompt and diligent party with which they have been cast in joint and several liability." 318 F.Supp. at 958. See also, Ruder, *supra*, at 658.

all joint tortfeasors under the Securities Acts must contribute equally to the plaintiff's recovery. Reynolds counterclaims for contribution from the Litton defendants on theory that contribution in this case should be according to the benefit received from the merger. The settling defendants other than Reynolds contend that contribution should be awarded, if at all, according to comparative negligence.

Those sections of the Securities Acts which expressly provide for contribution state that persons liable thereunder may recover contribution "as in cases of contract".[16] The Litton defendants contend that this language governs contribution under § 14(a) and that in cases of contract at common law, joint obligors are required to contribute equally, i. e., pro rata. The Litton defendants further urge that they collectively constitute one of twelve joint tortfeasors in this case and, accordingly, that their own liability should be one-twelfth of the damages assessed under this Court's formula.

■ This Court is unwilling to read the phrase "as in cases of contract" as precluding the application of equitable principles to contribution under § 14(a). The legislative history of the Securities Acts does not interpret this phrase,[17] but it was evidently intended to avoid restrictions on contribution then found in the common law and, in particular, the policy denying contribution among joint tortfeasors. Douglas & Bates, note

9, *supra*, at 178–79; Ruder, *supra*, at 650. There is no evidence that this provision was designed by Congress to preclude equitable considerations in awarding contribution in securities cases.

■ Traditionally, equity has been the hallmark of contribution. The doctrine originated in courts of equity, and its rationale has not been altered by adoption in the common law. Jones v. Schramm, 141 U.S.App.D.C. 169, 436 F.2d 899 (1970); George's Radio, Inc. v. Capital Transit Co., 126 F.2d 219 (D.C. Cir. 1942); 18 Am.Jur.2d Contribution §§ 4 and 5. The governing principle of contribution throughout has been that one of two or more joint wrongdoers should not be required to pay more than his share of a common burden, or to put it another way, that no obligor should be unjustly benefited at the expense of another. George's Radio, Inc. v. Capital Transit Co., *supra*, at 220–221.

■ In the present case, this Court, after taking into account the settlement between plaintiffs and several of the defendants, determined that equity required the Litton defendants to share with the plaintiff class the premium obtained in the McLean-Reynolds merger. The Litton defendants were required to disgorge approximately 28% of their total premium. 362 F.Supp. at 778. Even assuming for purposes of argument that pro rata contribution is generally applicable in securities cases,[18] in these circumstances the Court cannot conclude

---

16. Section 11(f) of the 1933 Act, 15 U.S.C. § 77k(f) provides:

> All or any one or more of the persons specified in subsection (a) of this section shall be jointly and severally liable, and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.

Section 9(e) of the 1934 Act, 15 U.S.C. § 78i(e) provides:

> . . . Every person who becomes liable to make any payment under this subsec-

tion may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment. . . .

Section 18(b) of the 1934 Act, 15 U.S.C. § 78r(b), contains essentially the same language as § 9(e).

17. Ruder, *supra*, at 650, n. 236.

18. In Gomes v. Brodhurst, however, the Third Circuit Court of Appeals expressed a preference for comparative negligence as the measure of contribution in cases at common law. 394 F.2d at 469–470.

that the Litton defendants have been required to pay an inequitable share of the liability to the plaintiff class. On the contrary, it could be inequitable to require any of the settling defendants to compensate the Litton defendants for disgorgement of a benefit received by the Litton defendants. Indeed, while several authorities have supported the pro rata measure of contribution in securities cases generally,[19] it has also been recognized that a different result should obtain where damages are assessed under a theory calling for disgorgement of profits.[20]

As a further matter, this Court notes that pro rata contribution has not been inflexibly required in contract cases at common law. It has been held, for example, that where co-obligors have received unequal benefits from a common obligation, the portion of contribution that each must bear is according to the benefit that each has received. Livingston v. Falk, 217 A.D. 360, 217 N.Y.S. 131 (Sup.Ct.App.Div.1926); Manning v. Campbell, 204 N.Y.S.2d 718, 741 (Sup. Ct.1960); 18 Am.Jur.2d Contribution § 24. Denying contribution in favor of the Litton defendants is consistent with these cases.[21]

The Reynolds claim for contribution toward the amount it expended in settlement stands on somewhat different footing. Reynolds urges that contribution in this case should be according to the benefit received. Reynolds asserts that because it received no premium as a result of the merger, it is entitled to contribution from the Litton defendants, who did receive a premium.[22]

■ Reynolds' argument for contribution is unacceptable, for it would require, by logical extension, that all joint tortfeasors who receive no premium in cases of this type could gain contribution for the full amount of their liability from the recipients of the premium. This measure of recovery would amount in principle to full indemnity for those tort-feasors who received no premium and as such is impermissible for the reasons previously discussed.

■ More fundamentally, this Court cannot conclude that had the action against the settling defendants proceeded to trial, no damages could have been assessed against Reynolds.[23] The fact that damages were assessed against the Litton defendants on a disgorgement theory does not require that a defendant who received no premium in this case owes no damages. See 362 F.Supp. at 776–778. Because Reynolds settled before trial, this Court was not required to

---

19. Douglas & Bates, 43 Yale L.J. at 179–80 and Ruder, 120 U.Pa.L.Rev. at 650, n. 239, take the position that pro rata contribution is generally preferable to other methods of allocating damages among securities tortfeasors because of the ease of administration. Disgorgement of a premium received, however, is no more difficult to administer than pro rata contribution. Two courts have held that pro rata contribution is proper for those found jointly and severally liable for § 10(b) violations, Herzfeld v. Laventhol, 378 F.Supp. at 136; Globus v. Law Research Service, Inc., 318 F.Supp. at 958, but in neither case were damages awarded on a disgorgement theory. In both Herzfeld and Globus, the courts determined that the joint tortfeasors were all equally culpable. As a result, even if those courts had applied a comparative negligence rather than a pro rata measure of contribution, the results may well have been the same.

20. Ruder, supra, at 651, n. 240.

21. This Court does not reach the perplexing question of whether a bona fide settlement is a bar to contribution in favor of a non-settling defendant. Compare Altman v. Liberty Equities Corp., 54 F.R.D. at 625, with Gomes v. Brodhurst, 394 F.2d at 468, and Sabre Shipping Corp. v. American President Lines, 298 F.Supp. 1339, 1346 (S.D.N. Y.1969). The Court also need not determine whether, as the Litton defendants contend, there are twelve relevant tortfeasors for purposes of contribution.

22. Reynolds contends that since the Litton defendants received 45.57% of the total premium received by the favored shareholders, the Litton defendants should pay Reynolds 45.57% of the amount reasonably expended by Reynolds in settlement of this action, or approximately $229,000.00.

23. See the discussion of the Litton defendants' claim for a set-off, infra.

determine which of several alternative theories of damages, if any, was applicable to Reynolds. The Court is aware of no equitable considerations now requiring that determination. In short, Reynolds has offered no persuasive evidence that, in light of the judgment against the Litton defendants, the amount expended by Reynolds in settlement is in excess of its appropriate share.

### Credit for the Previous Settlement

The Litton defendants assert the "fundamental principle" that absent any punitive damages a plaintiff may only recover in the legal process the amount of his injury, whether that recovery comes by settlement, by judgment, or otherwise. They argue that if the same premium theory of recovery were applied to both the settling and non-settling defendants, the total claim for damages of the plaintiff class would be $5,333,644.00.[24] According to this argument, since the plaintiff class has obtained a settlement of $4,000,000.00 from some of the defendants, the class can now recover no more than $1,333,-644.00 from the Litton defendants.[25]

■■■ The critical flaw in this argument is that its factual predicate—that the "total damages" of the plaintiff class were only $5,333,644.00—has not been established. Because the bulk of the defendants settled before trial, this Court was not required to assess damages against them. This Court is unable to conclude that the same measure of damages applied to the Litton defendants would have been applied to all of the settling defendants had the action against them proceeded to trial. Certain theories of damages that plaintiffs might have asserted against all of the defendants were excluded by stipulation (DX–4) in the trial against the Litton defendants.[26] Moreover, in exercise of its discretion, this Court did not award pre-judgment interest against the Litton defendants. Had the settlement not preceded judgment against the Litton defendants, this Court might well have required payment of pre-judgment interest, which would have increased the "total damages" considerably. Finally, in light of the fact that the Court may award reasonable attorney's fees in a suit under § 14(a), Mills v. Electric Auto-Lite, 396 U.S. 375, 389–397, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970), it may be that a portion of the $4,000,000.00 settlement should be allocated to "damages" and a portion to "attorney's fees"; if so, it would be difficult to conclude that giving full scope to the judgment against the Litton defendants overcompensates the plaintiff class.

The Litton defendants have failed to establish that disgorgement of approximately 28% of the premium they obtained by means of the Reynolds-McLean merger would unjustly enrich the plaintiff class. Moreover, as indicated in the foregoing discussion of indemnity and contribution, this Court has also concluded that the disgorgement remedy will not unjustly tax the Litton defendants.

### Conclusion

In summary, the losses incurred by the Litton defendants and by Reynolds, through judgment and settlement respectively, will not be shifted by indemnity

24. This amount is calculated as follows: the total premium obtained by all defendants ($8.25 per share x 2,304,000 shares = $19,008,000.00) multiplied by the percentage of McLean shares in the plaintiff class (approximately 28%) yields $5,333,644.00.

25. See generally, Gomes v. Brodhurst, supra; McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659 (1943); Note, Settlement in Joint Tort Cases, 18 Stan.L.Rev. 486 (1966); Note, Consequences of Proceeding Separately Against Concurrent Tortfeasors, 68 Harv.L. Rev. 697 (1955).

26. For example, the class did not contend that the shares of Reynolds $2.25 Convertible Preferred Stock, without par value, received by McLean shareholders in exchange for their shares of McLean A Common Stock in the merger had an intrinsic or appraised market value that was less than the intrinsic or appraised market value of the McLean Common surrendered.

or contribution. Furthermore, the Litton defendants cannot by reference to the amount of the settlement justify retention of that portion of their premium which this Court has awarded to the plaintiff class.

Submit order.