STATE v. C. J. BENTON.

(Filed 11 December, 1935.)

**1. Criminal Law L e—**

Where it is determined on appeal that defendant's motion to nonsuit should have been allowed, other assignments of error, relied on for a new trial, need not be considered.

**2. Automobiles C 1—Position of needle on speedometer after collision held no evidence of speed of car at time of collision.**

After the collision in question the speedometer on defendant's car registered 70 miles per hour, the speedometer having stuck and ceased to function as a result of the collision. *Held:* Whether the needle on the speedometer fell or rose after the collision is a matter of speculation and conjecture, and its position after the collision is no evidence that defendant was driving 70 miles per hour at the time of the collision.

**3. Automobiles G b—**

In this prosecution for homicide for the death of deceased, killed in an automobile collision, defendant's motion to nonsuit should have been allowed, there being no evidence that the collision was caused by the culpable negligence of defendant.

APPEAL by defendant from *Williams, J.,* at August Term, 1935, of COLUMBUS. Reversed.

This is a criminal action in which the defendant was tried on an indictment in which it was charged that on 20 January, 1935, at and in Columbus County, North Carolina, the defendant C. J. Benton did kill and murder L. E. Hooks.

When the defendant was arraigned for trial, the solicitor for the State announced that on the evidence which he would offer for the State he would not contend that the defendant was guilty of murder in the first degree, but that he would contend that the defendant was guilty of murder in the second degree, or of manslaughter, as the jury should find the facts from all the evidence. The defendant entered a plea of not guilty.

The evidence for the State showed that some time between 2 and 3 o'clock on the morning of 20 January, 1935, there was a collision on a highway in Columbus County, between an automobile driven by the defendant C. J. Benton and an automobile driven by the deceased, L. E. Hooks, and that the death of the deceased was the result of personal injuries caused by the collision.

J. R. Pridgen, a witness for the State, testified as follows:

"I am a member of the State Highway Patrol, and was called to the scene of the wreck in which Mr. Hooks lost his life. I arrived on the scene at about 3 o'clock on the morning of 20 January, 1935, and made an investigation. I found the dead body of Mr. Hooks in the automo-

bile which he was driving at the time of the collision. This automobile was on the right side of the highway going in the direction in which Mr. Hooks was driving. Its left fender and left front wheel were broken off. The steering wheel was broken. A part of the steering wheel was sticking in a tire on the automobile which the defendant was driving at the time of the collision. This automobile had swung around after the collision, and was standing on the right side of the highway going in the direction in which the defendant was driving. It had turned over and stopped about ten steps from the point of its impact with the deceased's automobile, which was near the center of the highway. I observed the speedometer on defendant's automobile. Its needle was hung and was pointing to seventy, that is, seventy miles per hour.

"About two days after he left the hospital the defendant, who was injured in the wreck, told me that when he first saw the deceased's automobile approaching him on the highway its lights were not burning, and that at first he started to pass on his left, but quickly changed his mind and passed on his right.

"The automobile which the deceased was driving at the time of the collision was an old Chrysler roadster, 1927 or 1928 model. The defendant was driving a Ford V-8."

At the time of the collision, the deceased was driving alone; the defendant had two companions in his automobile. Neither of the latter was called as witness. The defendant did not offer evidence.

The jury found that the defendant is guilty of involuntary manslaughter.

From judgment that he be confined in the State's Prison for a term of not less than eighteen months or more than four years, the defendant appealed to the Supreme Court, assigning as error the refusal of the court to allow his motion for judgment as of nonsuit, and other errors as appear in the case on appeal.

*Attorney-General Seawell and Assistant Attorneys-General Aiken and Bruton for the State.*
*Tucker & Proctor for defendant.*

CONNOR, J. As there was error in the refusal of the trial court to allow defendant's motion at the close of all the evidence for judgment of nonsuit, we shall not discuss other assignments of error urged by counsel for defendant as entitling him to a new trial.

The evidence tending to show that the needle on the speedometer on defendant's automobile, after the collision, which wrecked both automobiles, pointed to the figures "70" on the dial, while admissible to show the condition of the automobile after the collision, has no probative

value as evidence to show the speed at which the defendant was driving his automobile at the time of the collision. The needle was hung, showing that the speedometer was injured by the collision, and ceased to function. Otherwise, it would have fallen to the figure "0" when the automobile stopped. Whether the needle on the speedometer fell or rose, after the collision, is a matter of conjecture and speculation. Its position on the dial after the collision, and the resulting injury to the speedometer, has no value as evidence showing the speed at which the automobile was driven before its collision with the automobile of the deceased.

As there was no evidence at the trial of the action tending to show that the collision of the two automobiles, and the resulting death of the deceased, was caused by the culpable negligence of the defendant, the action should have been dismissed.

The judgment is

Reversed.