# HARDWARE MUTUAL CASUALTY COMPANY
## v. GLEN DANBERRY.[1]

June 22, 1951.

No. 35,439.

---

[1]Reported in 48 N. W. (2d) 567.

*Carroll & Thorson,* for appellant.
*Wm. Stradtmann,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

This appeal arises out of an automobile-truck collision at a point in Blue Earth county, Minnesota, where highway No. 179 intersects at right angles with Marysburg highway at what is known as the Marysburg Corner. On November 8, 1946, defendant, Glen Danberry, who at the time of the trial was a minor 20 years of age, was operating a 1937 model Packard automobile with the consent of the owner, one Harold Kenyon. Riding with him as a passenger was Grace Kenyon, wife of the owner. He was driving east on Marysburg highway, and about the same time one Melvin Burnett was operating a Chevrolet truck owned by plaintiff's assured, Madison Lake Creamery Company, in a southerly direction on highway No. 179. The two vehicles collided in the intersection, and Grace Kenyon was severely injured. She thereupon brought an action for damages against Melvin Burnett and plaintiff's assured, in which action Glen Danberry was joined as a third-party defendant. During the course of the trial, Grace Kenyon settled her claim with Burnett and plaintiff's assured for $15,000. This entire sum was

paid by plaintiff, which brought this action to obtain contribution from defendant herein.

The facts necessary for our consideration are briefly as follows:

Burnett was traveling south on highway No. 179, a graveled highway, made slippery by a rain which had fallen the morning of the accident. He was driving a 1½-or 2-ton truck, approximately half loaded with milk which he had picked up that morning on his creamery route. He testified that he was traveling about 20 miles per hour, and under the circumstances existing at the time of the collision could have stopped the truck within a distance of 50 or 60 feet. He testified also that he was familiar with the Marysburg Corner, knew it to be dangerous, and that he was aware of the law which gave the right of way to the driver of any vehicle on his right. Defendant was traveling east on the Marysburg highway, which also was a graveled road. The view of anyone approaching the intersection from either the north or the west was obstructed by farm buildings, a grove of trees, and a hedge, which were located in the northwest corner of the angle formed by the intersecting highways. Except for scattered clearings between the buildings and the trees, these obstructions blocked the view of anyone approaching from the north until he reached a point approximately 250 feet from the intersection. From the west, the view was blocked until a point approximately 175 feet from the center of the intersection was reached. Both drivers testified that they had looked both ways upon approaching the intersection. Burnett testified that as he approached the intersection his view toward the west was obstructed, except "a couple times" when he could see through small clearances between the buildings. He said that he did not see the car coming from the west until after he got into the intersection, when he "got a glimpse of it and then they hit."

Defendant testified that he first saw the truck when he was approximately 175 feet from the center of the intersection. He estimated that the truck was then about 300 feet from the intersection. He did not see the truck again until it was entering the intersection. He claimed that he was the first one in the inter-

section, that he was driving about 35 miles an hour as he approached the intersection, and believed that he slackened his speed before entering it.

After the impact at the intersection, the automobile stood south of the east-west road and west of the north-south road, facing southwest. The truck was on the east side of the north-south road and south of the east-west road, facing west, with the rear wheels on the shoulder and the front wheels on the traveled portion of the road, about 70 feet south of the intersection. The right side of the truck was heavily damaged from the fender back through the cab of the truck, and the frame was bent toward the driver's seat approximately 30 or 34 inches, the full width of the frame. The automobile was more severely damaged. The motor was standing on end and had been pushed back sufficiently to pin defendant in the car. The post on the left-hand side of the car had to be cut away with an acetylene torch in order to free defendant, who suffered a broken leg and shoulder and who from the time of the accident until he was taken to a hospital remained in a state of semiconsciousness. Ben Fasnacht, who helped remove defendant from the car after the collision, testified that the speedometer needle in the car was jammed at 70 miles per hour. This testimony was objected to by defendant, which was overruled. This ruling constitutes one of the assignments of error. At the close of the testimony defendant moved for a directed verdict, which was denied.

The jury returned a verdict of $7,500 for plaintiff. Defendant moved for judgment notwithstanding the verdict or for a new trial, and the appeal is from a denial of the motion.

The only questions raised by defendant which we need consider are as follows:

(1) Did the court err in excluding from consideration of the jury the question of wilful and intentional violation of the statute by Melvin Burnett as bearing on the right of plaintiff to contribution?

(2) Did the court err in admitting testimony concerning the position of the speedometer needle in defendant's car after the collision and in denying the motion to strike that testimony?

■ Defendant argues that the court erred in refusing to give his requested instruction to the effect that if the jury found that Burnett was guilty of an intentional wrongful act or that he knowingly committed an illegal act plaintiff could not recover. He maintains that throughout the trial the court took the position, as stated in its memorandum attached to the order appealed from, that any negligence on the part of Burnett was no more than ordinary negligence and therefore was not a bar to plaintiff's recovery of contribution from defendant. Defendant contends that such a position cannot be maintained in light of the testimony of Burnett himself and of the Minnesota law applicable thereto. Defendant argues further that Burnett was guilty of wilful and intentional violation of M. S. A. 169.20, which provides in part:

"When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

It is defendant's position that Burnett was the driver of the vehicle on the left; that he knew that his view across the northwest corner of the intersection was partly obstructed by some buildings and a grove of trees; and that this partial obstruction began several hundred feet north of the intersection and continued nearly to the intersection along the west side of the highway. Defendant stresses that Burnett's testimony also made it clear that he knew that any car coming from his right had the right of way, but that, regardless of this knowledge, he entered the intersection without seeing or being able to see cars approaching from his right and thus failed to comply with § 169.20. It is therefore defendant's position that under these circumstances Burnett knew that he was required to yield the right of way to defendant and that his failure to stop before entering the intersection was wilful and intentional negligence and a wilful and intentional violation of the statutes of right of way and speed which would prevent plaintiff's recovery by way of contribution.

The issue on that point therefore simmers down primarily to whether the actions and conduct of Burnett as he approached and

entered the intersection constituted ordinary negligence as it is commonly known, or if his negligence amounted to an intentional wrongdoing which he knew or was presumed to have known was an illegal act.

The distinction and rule are set out in Fidelity & Cas. Co. v. Christenson, 183 Minn. 182, 186, 187, 236 N. W. 618, 619, 620, where this court said:

"* * * in negligence cases one seeking contribution from another joint tortfeasor is not barred from recovery by the fact that he was guilty of ordinary negligence in the matter; but if his negligence amounted to an intentional wrong, or if he knew or is presumed to have known that he was doing an unlawful act which constituted the negligence for which he was held liable, then he is not entitled to contribution. * * *

* * * * *

"Perhaps there may be some confusion as to the difference between an intention to inflict injury on a particular person or persons and a known or intentional violation of a statute intended for the protection of a class of persons. Where there is a known and intentional violation of statute, and one for whose protection the statute was enacted is injured thereby, the violation of the statute is a known and intentional wrong. There is rarely in these cases an intent to injure any particular person. Such intention is not necessary."

See, also, Ankeny v. Moffett, 37 Minn. 109, 33 N. W. 320.

In order to sustain defendant's contention that Burnett was guilty of wilful and intentional negligence in violation of the statutes rather than ordinary negligence—so as to defeat plaintiff's right of contribution—we must take the position that Burnett's conduct was such as to amount to an intentional wrong and that he knew or should have known that he was acting unlawfully. Defendant argues that Burnett's own testimony sustains this position by his admission that as he came south on the highway and approached the intersection he knew that anyone coming from the

west would have the right of way and that there was an obstruction to his view on the northwest corner of the intersection. We cannot agree with defendant's contentions that those admissions in themselves, considering all the other facts and circumstances involved, constituted wilful and intentional negligence on the part of Burnett. After all, there is no testimony that he approached or entered the intersection at more than 20 miles an hour, and his truck appears to have been struck more or less broadside. Rather, it appears to us, after considering his testimony and the record in its entirety, that he was guilty of ordinary negligence in failing to exercise such care as persons of ordinary prudence usually exercise under similar circumstances. 4 Dunnell, Dig. & Supp. § 6969. If we were to hold under the facts and circumstances here that he was guilty of wilful and intentional negligence, we would be saying in effect that in nearly all intersection accidents, especially where some obstruction exists, someone would be guilty of wilful and intentional negligence. This would be rather a harsh ruling in the instant case, in view of our many holdings in the past of ordinary negligence under somewhat similar circumstances. It has been a long-standing rule of this court, with certain exceptions, that violation of a statutory standard of conduct does not differ from ordinary negligence. Dart v. Pure Oil Co. 223 Minn. 526, 27 N. W. (2d) 555, 171 A. L. R. 885.

In Spartz v. Krebsbach, 226 Minn. 46, 31 N. W. (2d) 917, the defendant stopped his car on the highway in the nighttime without lights. It was contended that he was guilty of wilful negligence. After a verdict for the plaintiff, the trial court granted defendant's motion for judgment notwithstanding the verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law and that this defeated his right to recover, which would not have been the case had defendant actually been guilty of wilful negligence. In affirming the trial court's decision, this court said (226 Minn. 47, 31 N. W. [2d] 918):

" 'Wilful negligence embraces conduct where the infringement of another's right is not only intended but also it is foreseen that

the conduct pursued will result in such invasion.' Hanson v. Hall, 202 Minn. 381, 385, 279 N. W. 227, 229. The record does not bring this case within the scope of the wilful negligence rule."

See, also, Westerberg v. Motor Truck Service Co. 158 Minn. 202, 197 N. W. 98.

4 Dunnell, Dig. § 7036, defines wilful negligence as follows:

"* * * It is a failure, after, and not before, discovering the peril, to exercise ordinary or reasonable care to avoid the impending injury. Evidence merely showing negligence—a want of ordinary or reasonable care—will not sustain a finding of wilful or wanton negligence and the court should not submit the question to the jury."

In Bryant v. N. P. Ry. Co. 221 Minn. 577, 23 N. W. (2d) 174, where wilful negligence is defined, it was pointed out that such negligence is the failure *after and not before* discovering the peril to exercise ordinary or reasonable care to avoid impending injury.

There is no proof in the instant case that the driver of the truck neglected to do anything after he saw the car which defendant was driving—if he saw it at all—which might have prevented the collision. It is therefore our opinion that there was no evidence which required the trial court to submit to the jury the issue of wilful negligence on the part of Burnett.

Defendant cites Fidelity & Cas. Co. v. Christenson, 183 Minn. 182, 236 N. W. 618, *supra,* and Kemerer v. State Farm Mut. Auto Ins. Co. 211 Minn. 249, 300 N. W. 793, as controlling on the principle that where the one seeking contribution has intentionally violated a statute or ordinance, thus causing injury to another, he is guilty of an intentional wrong and is not entitled to contribution from one whose mere negligence contributed to cause the injury.

We feel that in the cases cited there was a far greater showing than in the case at bar that the one seeking contribution had intentionally violated a statute or ordinance and was guilty of an intentional wrong and illegal act. For example, in the Christenson case a truck owner parked his truck on a public street in the nighttime without any rear light burning. A collision with a Ford car oc-

curred, the owner and driver of which was guilty of ordinary negligence only. The negligence of each of the parties was a proximate and contributing cause of injury to a guest passenger in the Ford. The injured party recovered a verdict against the owner of the truck. The judgment was paid by the Fidelity & Casualty Company, the insurer of the truck owner, which became subrogated to any right of contribution which the truck owner might have had against the owner of the Ford. There, plaintiff insurer, as here, then sought to recover contribution from the owner of the Ford. It was held that plaintiff was not entitled to contribution, since it appeared to be undisputed that the negligence of the truck owner consisted of parking his truck on a public street in the nighttime, knowing that there was no rear or taillight burning thereon, in violation of the statute. The court there said that this was an illegal act and a conscious and intentional wrong on the part of the truck owner and that contribution on his behalf could not be sustained.

In the Kemerer case, 211 Minn. 249, 300 N. W. 793, there was a somewhat different situation, but still one not in point with the case at bar. There, two joint wrongdoers were approaching each other on the same street, coming from opposite directions. As they neared a certain intersection, one Mock, the party seeking contribution, made a sudden left turn, cutting in front of Kemerer, the party from whom contribution was sought, and the two cars collided. The trial court denied contribution on the basis of the decision in the Christenson case, 183 Minn. 182, 236 N. W. 618, *supra*. On appeal, the case was affirmed. It was the position of Mock's insurer that the facts did not support a finding of more than ordinary negligence on the part of its insured. This court did not agree with that contention, since a review of the record satisfied it that the trial court was justified in finding, as it did, that Mock, when he entered the intersection from the north and was about to turn left, saw the approaching Kemerer car and swung in front of it in intentional violation of the traffic law and that he did this in reckless disregard of the obvious danger, without seeing that such a movement could not be made in safety.

■ Defendant maintains that the court erred in admitting evidence as to the position of the speedometer needle after the accident and in refusing to instruct the jury that there was no evidence that defendant was traveling in excess of 60 miles an hour.

During the trial, the court permitted Ben Fasnacht, a farmer, to testify that after the collision he observed that the needle of the speedometer in the car defendant was driving was stopped at the numeral 70. He said that "It was stuck at 70 miles." This was objected to by defendant on the ground that it was prejudicial, not proper direct examination, immaterial, and no foundation laid. The objection was overruled. Later on in his direct testimony the witness explained that the needle or hand on the speedometer pointed to approximately 70. The witness came to the scene of the accident with his brother Ernest, a garageman at Madison Lake, shortly after the accident happened. Upon cross-examination, the witness admitted that so far as he could recall the dashboard on the car which defendant was driving was all broken and bent, but he did not remember whether the glass was broken on the speedometer or any other instrument on the dashboard, or on the oil gauge, or whether the steering wheel was broken or bent. He said that the dashboard "was pushed way back, had to cut the post out between the two doors in order to get Danberry out of the car." He was not a mechanic, but said that he was familiar with the way a speedometer is attached to a car. He did not describe the particular speedometer in question, except that it had an indicator in a circle something like the hand of a clock.

Ernest Fasnacht, a garageman, who came to the scene of the accident at the same time as his brother Ben, testified on cross-examination that he did not look at the speedometer in question until about half an hour after he got to the scene of the accident and that someone then said, "look at that speedometer, it is at 70." He "noticed that somebody had taken the glass out of the speedometer, the glass was broken, as I recall." He did not think that the speedometer cable was broken or torn loose, but said that if the glass was broken and the cable was not broken it could be that the cable was

pulled out of its normal position. He said that the dashboard was six inches or a foot out of place, but explained that speedometer cables are flexible and could be stretched up "to two feet without breaking the outside cable. But as far as the inside cable is concerned, that don't stretch a quarter of an inch or an inch."

Both these witnesses testified as to the position of the car and truck after the accident and what was done to extricate defendant from the car.

We believe that it was prejudicial error to admit evidence showing the position of the speedometer needle after the accident. In the absence of a foundation showing that the speedometer was operating properly prior to the collision and that the speedometer needle could not be moved upward by the force of the collision, we do not believe that it should be admitted at all. If such foundation can be laid, it may be admissible, together with other circumstantial evidence; but in that event the court should carefully caution the jury that it is not conclusive, but may be considered together with all other evidence in determining the speed at which the automobile was operated immediately prior to the collision.

We have carefully examined the cases cited by plaintiff[2] and defendant[3] and the cases cited under the text of 61 C. J. S., Motor Vehicles, § 516, p. 271,[4] but we do not believe that any of them are controlling on the issue now before us. We see no useful purpose in trying to distinguish them.

■ We find no reversible error in the manner in which the trial court handled the inquiry with reference to the Western Casualty & Surety Company. It is apparent from the record that the company in question was interested to some extent at least in the case,

[2]Nolan v. Newfert, 179 Minn. 293, 229 N. W. 97; Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450.

[3]State v. Benton, 209 N. C. 27, 182 S. E. 690; Jones v. Traver, 275 Ill. App. 181.

[4]Carl v. Shaffer, 71 Ohio App. 339, 50 N. E. (2d) 182; Albrecht v. Safeway Stores, Inc. 159 Or. 331, 80 P. (2d) 62; Geason v. Schaefer, 229 Wis. 8, 281 N. W. 681.

as the stipulation between the company and Harold Kenyon, owner of the Packard, and defendant provided in part that the company would defend the action on the part of defendant without any expense to him, but without any liability on the part of the company to pay any verdict or judgment against defendant until liability should be determined between the latter and the company. The court made it clear that the company might or might not have an interest in the outcome of the case and merely asked the jury panel whether any of them had stock in this particular company.

Remanded for a new trial on the issue of negligence of defendant. Reversed.

---

[1]Reported in 48 N. W. (2d) 551.