PROFESSIONAL BEAUTY SUPPLY, INC., a Minnesota Corporation,

v.

NATIONAL BEAUTY SUPPLY, INC., a Minnesota Corporation, Appellant,

v.

LA MAUR INC., Appellee.

No. 78–1229.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1978.

Decided Feb. 27, 1979.

Jane A. McTaggart, of Gainsley, Squier & Korsh, Minneapolis, Minn., for appellant; Thomas J. Squier, Minneapolis, Minn., on brief.

Robert L. Barrows, of Leonard, Street & Deinard, Minneapolis, Minn., for appellee; Charles A. Mays, Minneapolis, Minn., on brief.

Before HEANEY and STEPHENSON, Circuit Judges, and HANSON,* Senior District Judge.

STEPHENSON, Circuit Judge.

National Beauty Supply, Inc. (National) appeals from the dismissal by the district court[1] of its third-party complaint against

---

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

La Maur Inc. (La Maur) for failure to state a claim upon which relief could be granted.[2] At this stage of the proceedings the issue is whether under any set of facts National could be entitled to contribution or indemnification from La Maur pursuant to either federal or Minnesota law. By dismissing the third-party complaint the district court held that neither contribution nor indemnification was available to National. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

This action was originally commenced by Professional Beauty Supply, Inc. (Professional) against National. In its complaint, Professional, a wholesaler of beauty supplies, alleged that National, also a wholesaler of beauty supplies, demanded that La Maur, a manufacturer of beauty supplies, grant National an exclusive dealership for La Maur's products in Minnesota. It was further alleged that as a result of these demands Professional was terminated as a La Maur dealer on April 2, 1973. In Count I of its complaint Professional claimed that the acts of National were done to monopolize or in an attempt to monopolize or to combine or conspire with another person to monopolize a part of trade or commerce in violation of federal antitrust law, 15 U.S.C. § 2. In Counts II and III, respectively, Professional claimed that the same acts constituted a violation of Minnesota antitrust law, Minn.Stat.Ann. §§ 325.8014, 325.-8015, and a tortious interference with Professional's business relationship with La Maur.

On this appeal National states that after filing an answer and undertaking initial discovery it became apparent that Professional's entire claim was based on the alleged joint wrongdoing of La Maur and National. At that time National requested and was granted permission to file a third-party complaint against La Maur. In its third-party complaint National alleged that "La Maur solicited National to become a distributor of La Maur's products in the State of Minnesota," and that "National had no responsibility for, or control over La Maur's decision to terminate Professional." National further alleged that in the event it is found liable to Professional for violation of either federal or state antitrust laws, it is entitled to contribution from La Maur to the extent of at least one-half of the recovery. On appeal, National also argues that since it had no control over La Maur's decision to terminate Professional, it is at most secondarily liable to Professional and is thus entitled to indemnification from La Maur. Finally, National alleged that La Maur had a duty, which it failed to perform, to reveal to National the nature and extent of all business relationships between La Maur and others which might be unlawfully interfered with if National were granted an exclusive dealership in Minnesota. Thus, National claims that La Maur's failure to make such disclosure entitles it to indemnification from La Maur in the event National is found to have tortiously interfered with Professional's business relationships.

La Maur filed a motion under Fed.R. Civ.P. 12(b)(6) to have the third-party complaint dismissed for failure to state a claim upon which relief could be granted. On January 26, 1978, the district court entered an order dismissing the third-party complaint for failure to state a claim. The order was not accompanied by a memorandum opinion, but entry of final judgment was directed pursuant to Fed.R.Civ.P. 54(b). This appeal followed.

■ Since this matter is before the court as an appeal from the dismissal of the third-party complaint, the facts alleged in the third-party complaint must be accepted as true and the district court's dismissal upheld only if it appears beyond doubt that National can prove no set of facts which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Quality Mercury, Inc. v. Ford Motor Co.*, 542 F.2d 466, 468 (8th Cir.

---

2. The district court expressly determined "that there is no just reason for delay" and directed entry of final judgment dismissing the third-party complaint against third-party defendant La Maur Inc. *See* Fed.R.Civ.P. 54(b).

1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977).

*I. Contribution Under Federal Antitrust Law*

 We note at the outset that federal law governs the issue of whether there is a right to contribution in an antitrust case. *El Camino Glass v. Sunglo Glass Co.,* [1977–1] Trade Reg.Rep. (CCH) ¶ 61,533 (N.D.Cal. 1976); *Sabre Shipping Corp. v. American President Lines, Ltd.,* 298 F.Supp. 1339 (S.D.N.Y.1969).[3] The traditional federal common law rule is that contribution is not available from joint tortfeasors. However, National urges that we adopt a rule which would allow contribution from joint tortfeasors in federal antitrust cases. We believe that sound policy reasons dictate such a result and accordingly hold that under

certain circumstances an antitrust defendant may be entitled to pro rata[4] contribution from other joint tortfeasors.[5]

To our knowledge no circuit court has directly decided the precise issue before us.[6] At least four federal district courts have confronted the issue and have unanimously held that there is no right to contribution under federal antitrust law. *Olson Farms, Inc. v. Safeway Stores, Inc.,* [1977–2] Trade Reg.Rep. (CCH) ¶ 61,698 (D.Utah 1977); *Wilson P. Abraham Constr. Co. v. Texas Indus., Inc.,* No. 75–2820 (E.D.La. Oct. 5, 1977); *El Camino Glass v. Sunglo Glass Co., supra; Sabre Shipping Corp. v. American President Lines, Ltd., supra.* See also *Baughman v. Cooper-Jarrett, Inc.,* 391 F.Supp. 671, 678 n. 3 (W.D.Pa.1975), *aff'd in part, rev'd in part,* 530 F.2d 529 (3d Cir.),

---

**3.** When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted.
*Sola Elec. Co. v. Jefferson Elec. Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942).

**4.** Among courts allowing contribution in other areas of the law there is a conflict as to whether contribution is available on a pro rata or comparative fault basis. *Compare Herzfield v. Laventhol, Krekstein, Horwath & Horwath,* 378 F.Supp. 112, 136 & n. 58 (S.D.N.Y.1974), *aff'd in part, rev'd in part,* 540 F.2d 27 (2d Cir. 1976), *and Globus, Inc. v. Law Research Serv., Inc.,* 318 F.Supp. 955, 958 (S.D.N.Y.1970), *aff'd,* 442 F.2d 1346 (2d Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971), *and* cases cited in W. Prosser, Law of Torts § 50, at 310 n. 84 (4th ed. 1971), *with Kohr v. Allegheny Airlines,* 504 F.2d 400, 405 (7th Cir. 1974), *and Gomes v. Brodhurst,* 394 F.2d 465, 469–70 (3d Cir. 1968). Because of the administrative difficulties of assessing exact percentages of fault in complicated antitrust actions and because we believe a rule of pro rata contribution will serve as a more effective deterrent to antitrust violations (*i. e.,* under a comparative fault rule some parties may feel they have little to lose in joining in an antitrust violation in a minor capacity), we adopt a rule of pro rata contribution except in unusual circumstances. *See Wassel v. Eglowsky,* 399 F.Supp. 1330, 1370–71 (D.Md.1975), *aff'd* 542 F.2d 1235 (4th Cir. 1976); W. Prosser, Law of Torts § 50, at 310 (4th ed. 1971); P. Corbett, Apportionment of Damages and Contribution Among Coconspira-

tors in Antitrust Treble Damage Actions, 31 Ford.L.Rev. 111, 138–39 (1962).

**5.** In light of our holding we do not pass on National's claim that to deny it both contribution and indemnification would violate the due process clause.

**6.** In *Goldlawr, Inc. v. Shubert,* 276 F.2d 614, 616 (3d Cir. 1960), the Third Circuit stated: "there would seem to be strong justification for appellee's contention that the tort asserted to lie in the third party complaint is governed by federal common law with no right of contribution between tort feasors" (footnotes omitted). However, this statement was dictum since the holding of the case was that the defendants-third-party plaintiffs and the third-party defendants were not joint tortfeasors. Further, this case is not persuasive authority for the position of no contribution in that no reasoning was provided to support the court's statement. *American Motor Inns, Inc. v. Holiday Inns, Inc.,* 521 F.2d 1230 (3d Cir. 1975), and *Walker Distrib. Co. v. Lucky Lager Brewing Co.,* 323 F.2d 1 (9th Cir. 1963), were also cited by the court in *Wilson P. Abraham Constr. Co. v. Texas Indus., Inc.,* No. 75–2820 (E.D.La. Oct. 5, 1977), as holding that there is no right of contribution in federal antitrust cases. These cases only state the general rule, with which we do not disagree, that a plaintiff may choose to not join all coconspirators in an anti-trust action. *American Motor Inns, Inc. v. Holiday Inns, Inc., supra,* 521 F.2d at 1244–45 n. 42; *Walker Distrib. Co. v. Lucky Lager Brewing Co., supra,* 323 F.2d at 8. Such a statement stops far short of holding that one conspirator is not entitled to contribution from other coconspirators.

cert. denied, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976) (dictum); *Wainwright v. Kraftco Corp.*, 58 F.R.D. 9, 11–12 (N.D.Ga. 1973) (arguably by implication); *Washington v. American Pipe & Constr. Co.*, 280 F.Supp. 802, 804–05 (S.D.Cal.1968) (arguably by implication). Nevertheless, we are not persuaded that a rule barring contribution is correct. Of the above cited cases, only *El Camino Glass*, *supra*, and *Sabre Shipping Corp.*, *supra*, provide any insight into the reasoning of the court.

In *Sabre Shipping Corp. v. American President Lines, Ltd.*, *supra*, the primary case authority relied on by the court was *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). *Halcyon* is a 1952 admiralty case which has been widely cited for the proposition that there is no federal common law right to contribution and that it should be up to Congress, rather than the courts, to alter the rule. *E. g., Sabre Shipping Corp. v. American President Lines, Ltd.*, *supra*, 298 F.Supp. at 1344. However, the vitality of *Halcyon* was seriously eroded by *Cooper Stevedoring Co. v. Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), decided after *Sabre Shipping.* In *Cooper Stevedoring*, the Supreme Court limited the application of *Halcyon* to those cases where the joint tortfeasor from whom liability is sought is immune from tort liability by statute. In limiting the breadth of *Halcyon*, the Court stated: "[A] 'more equal distribution of justice' can best be achieved by ameliorating the common-law rule against contribution which permits a plaintiff to force one of two wrongdoers to bear the entire loss, though the other may have been equally or more to blame." *Cooper Stevedoring Co. v. Kopke, Inc.*, *supra*, 417 U.S. at 111, 94 S.Ct. at 2177. The Court further stated "[s]ince [plaintiff] could have elected to make [third-party defendant] bear its share of the damages caused by its negligence, we see no reason why [defendant-third-party plaintiff] should not be accorded the same right." *Id.* at 113, 94 S.Ct. at 2178. As a minimum *Cooper Stevedoring* and earlier admiralty cases demonstrate that under certain circumstances the Su-

preme Court is willing to fashion a rule allowing contribution without express direction from Congress. *See id.* at 110–11, 94 S.Ct. 2174.

*El Camino Glass v. Sunglo Glass Co.*, *supra*, relies on *Sabre Shipping*, and in addition discusses many of the policy reasons both for and against contribution in antitrust cases. We do not disagree with much of the court's discussion but do take exception to its conclusion that "[w]hile the above arguments in favor of permitting contribution are persuasive, the court concludes that on balance the ends of justice will be better served by holding that contribution is not available in an antitrust suit." *El Camino Glass v. Sunglo Glass Co.*, *supra*, Trade Reg. Rep. (CCH) at 72,112.

■ From an examination of La Maur's brief and the *El Camino Glass* and *Sabre Shipping* cases we discern five principal reasons advanced in support of the rule not allowing contribution. First, it is argued that it was the intent of Congress to exclude contribution. The essence of this argument is that since Congress put provisions for contribution in certain sections of the Security Acts of 1933 and 1934, but not in the Antitrust Acts, there was congressional intent to not allow contribution in antitrust cases. Furthermore, Congress has not acted in the face of the longstanding common law rule against contribution or the lower court decisions which hold that contribution is not available in antitrust cases.

We initially note that the antitrust statutes are not purported to be comprehensive and, possibly as a result, courts have not been prone to await congressional action to resolve many of the questions left unanswered by these statutes, such as the nature of the cause of action, apportionment of judgments, assignment, survival and limitations. Additionally, contrary to La Maur's assertions, it is our view that the presence of contribution provisions in the security laws is some indication that if the question were presented today, Congress would include a right to contribution as part of the

antitrust laws. We further observe that there is a dearth of case law on this issue and comment that a complicated legal issue which is raised so infrequently is unlikely to spur immediate congressional action. Finally, we find further support for our position from the fact that federal courts have been willing to formulate rules for contribution in other areas of the law without express congressional direction.[7] *E. g., Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400 (7th Cir. 1974) (contribution and indemnification available on a comparative negligence basis in aviation collisions); *Chicago & N. W. Ry. v. Minnesota Transfer Ry.,* 371 F.2d 129 (8th Cir. 1967) (contribution available in FELA case if state law provides); *Knell v. Feltman,* 85 U.S.App.D.C. 22, 174 F.2d 662 (1949) (contribution available in ordinary negligence cases in District of Columbia); *Grogg v. General Motors Corp.,* 72 F.R.D. 523, 527–28 (S.D.N.Y.1976) (contribution available in federal sex discrimination cases); *Gould v. American-Hawaiian Steamship Co.,* 387 F.Supp. 163, 168–69 (D.Del.1974), *vacated on other grounds,* 535 F.2d 761 (3d Cir. 1976) (contribution available under section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)); *Globus, Inc. v. Law Research Serv., Inc.,* 318 F.Supp. 955 (S.D.N.Y.1970), *aff'd,* 442 F.2d 1346 (2d Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971) (contribution available under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)).

Second, it is contended that allowing contribution will interfere with the plaintiff's ability to maintain control of his lawsuit. The fear expressed, which is indeed a legitimate one, is that a defendant may attempt to complicate the issues and confuse the jury by impleading numerous third-party defendants or fundamentally alter the lawsuit by impleading a third-party defendant with financial resources far superior to the plaintiff or the original defendant. Without downplaying the seriousness of this fear, we are confident that such problems can be avoided by the district court's prudent use of its power to sever where necessary to insure justice. In the present case Professional has not objected to the adding of La Maur as a third-party defendant.

A third reason advanced is that a right to contribution might serve as a possible deterrent to settlement. We are not convinced that a holding permitting contribution need undermine the judicial policy in favor of settlement. The problem of how to treat a joint tortfeasor who has settled in good faith is not present in this case. However, in the proper case the court should be able to fashion a rule of contribution which will protect the rights of settling defendants. *See, e. g., Herzfield v. Laventhol, Krekstein, Horwath & Horwath,* 540 F.2d 27, 38–39 (2d Cir. 1976); *Gomes v. Brodhurst,* 394 F.2d 465, 468–70 (3d Cir. 1968). *See also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 348, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (if plaintiff recovered damages in settlement from one defendant he could not recover for the same damages from another defendant); *Leach v. Mon River Towing, Inc.,* 363 F.Supp. 637, 642–43 (W.D.Pa.1973) (effect of release on amount of damages recoverable from remaining defendants); W. Prosser, Law of Torts § 50, at 309–10 (4th ed. 1971); F. James, Contribution Among Joint Tortfeasors: A Pragmatic Criticism, 54 Harv.L. Rev. 1156, 1161–62 (1941); C. Gregory, Contribution Among Joint Tortfeasors: A Defense, 54 Harv.L.Rev. 1170, 1172–73 (1941); F. Bohlen, Contribution and Indemnity Between Tortfeasors, 21 Corn.L.Q. 522, 567–68 (1936).

A fourth argument against contribution in antitrust cases is that antitrust suits are already enormously complex and it is unwise to further complicate matters by adding the issue of contribution among defend-

---

7. The trend among the states has been to allow contribution. A minimum of 23 states have enacted statutes which permit at least limited contribution and 6 other states are generally cited as having case law which recognizes the right to contribution where there is not intentional misconduct. *See* P. Corbett, Apportionment of Damages and Contribution Among Co-conspirators in Antitrust Treble Damage Actions, 31 Ford.L.Rev. 111, 113 (1962).

ants. We reemphasize that district courts have the ability to sever issues and parties if the need arises. More importantly, the vitality of this argument is somewhat suspect since contribution is allowed by statute under certain sections of the Security Acts, and security cases are often as complex as antitrust cases. We are aware of no unmanageable administrative problems which have been caused by allowing contribution in security cases. On the contrary, the trend has been to allow contribution in security actions which are brought under sections of the Security Acts which do not have express contribution provisions. *See, e. g., Odette v. Shearson, Hammill & Co.,* 394 F.Supp. 946, 957–58 (S.D.N.Y.1975); *Liggett & Myers Inc. v. Bloomfield,* 380 F.Supp. 1044 (S.D.N.Y.1974); *Globus, Inc. v. Law Research Serv., Inc., supra,* 318 F.Supp. 955; *deHaas v. Empire Petroleum Co.,* 286 F.Supp. 809 (D.Colo.1968), *aff'd in part, rev'd in part on other grounds,* 435 F.2d 1223 (10th Cir. 1970). *See also Getter v. R. G. Dickinson & Co.,* 366 F.Supp. 559, 569 (S.D.Iowa 1975).

The final reason urged by La Maur for a rule of no contribution is that the deterrent effect of the antitrust laws is increased by not permitting defendants to redistribute the cost of an antitrust action. We believe that the question of deterrence actually cuts both ways and on balance a rule allowing contribution is actually a greater deterrent. The fact that one tortfeasor may be held liable for all the damages arising from the antitrust violation necessarily means that other joint tortfeasors may go "scot free." This possibility of escaping all liability might cause many to be more willing, rather than less willing, to engage in wrongful activity.

This possibility significantly increases where a large or powerful tortfeasor has sufficient economic influence to prevent a plaintiff from including it as a defendant. National alleges that this is precisely what happened in the present case. National claims that in their depositions the principal shareholders of Professional stated that they were persuaded not to name La Maur as a defendant because of La Maur's deci-

sion to renew Professional's franchise. Whether such allegations are true can only be determined upon further factual development. However, such allegations are indicative of the exact abuses which are encouraged by a rule which automatically denies contribution to antitrust violators and which could be avoided by the formulation of a rule allowing contribution in certain cases. To deny contribution would be to dilute the deterrent effect of the antitrust laws, since a participant in an antitrust violation could escape all responsibility for its wrongdoing.

██ Contribution is an equitable doctrine based on the principle of justice between the parties. *See Dawson v. Contractors Transport Corp.,* 151 U.S.App.D.C. 401, 405–406 & n. 7, 467 F.2d 727, 731–32 & n. 7 (1972). "The governing principle of contribution throughout has been that one of two or more joint wrongdoers should not be required to pay more than his share of a common burden, or to put it another way, that no obligor should be unjustly benefitted at the expense of another." *Gould v. American-Hawaiian Steamship Co., supra,* 387 F.Supp. at 170. In *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 138, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), the Supreme Court cautioned against broad application of common law doctrines to prevent recovery if such application will defeat important public purposes. We are convinced that the result of automatically prohibiting contribution among antitrust defendants in all circumstances would be to allow a significant number of antitrust violators to escape liability for their wrongdoing and thereby undermine the policy of the antitrust laws.

The deciding factor in our decision is fairness between the parties. We conclude that fairness requires that the right of contribution exist among joint tortfeasors at least under certain circumstances. There is an obvious lack of sense and justice in a rule which permits the entire burden of restitution of a loss for which two parties are responsible to be placed upon one alone because of the plaintiff's whim or spite, or

his collusion with the other wrongdoer. *See, e. g., Gomes v. Brodhurst, supra,* 394 F.2d at 467–68 & n. 1.

▇ In sum, we adopt for the Eighth Circuit the rule that contribution may be enforced among joint tortfeasors in an antitrust action. Because of the deterrent policy of the antitrust laws, even intentional tortfeasors may obtain contribution so that tortfeasors will not escape liability. *Cf. Odette v. Shearson, Hammill & Co., supra,* 394 F.Supp. at 958; *Alexander & Baldwin, Inc. v. Peat, Marwick, Mitchell & Co.,* 385 F.Supp. 230, 238 (S.D.N.Y.1974); *Globus v. Law Research Serv., Inc., supra,* 318 F.Supp. at 955 (contribution under the securities laws even for intentional tortfeasors); sections 9(e), 18(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(e), 78r(b). We do not hold that contribution is available to all violators of the antitrust laws, regardless of the flagrancy of the conduct of the party seeking contribution. The decision of whether a particular party is entitled to contribution is best left to the trier of fact upon consideration of all of the circumstances of a case, including the factors specified by Justice White in his concurring opinion in *Perma Life Mufflers, Inc. v. International Parts Corp., supra.*[8] *Cf.* Section 11(f) of the Securities Act of 1933, 15 U.S.C. § 77k(f) (contribution unless one party guilty of fraudulent misrepresentation and not the other). At this stage of the proceedings contribution in favor of National is a possibility. Therefore, the district court erred in dismissing its third party complaint.

## II. Indemnification Under Federal Antitrust Law

▇ The subject of indemnification under federal antitrust law, like contribution, is governed by federal law. National claims that on remand it should be allowed to obtain indemnification from La Maur on the federal antitrust claim if it can prove that if any antitrust violation was committed, it was at La Maur's suggestion and urging, and thus La Maur was the "primary" wrongdoer and National was only "secondarily" liable. Indemnification, unlike contribution, permits a wrongdoer to escape loss by shifting his entire responsibility to another party. If indemnification were allowed, those found liable for breach of a statutory obligation might escape liability as effectively as if contribution were denied. We hold, therefore, that contribution may be allowed, but not indemnification. Thus, the loss will be apportioned among the joint wrongdoers so that the deterrent effect of the judgment will be felt by all culpable parties.

In *Perma Life Mufflers, Inc. v. International Parts Corp., supra,* 392 U.S. at 138–39, 88 S.Ct. 1981, the Supreme Court emphasized that the public interest and statutory aim of deterring antitrust violations and enforcing the antitrust laws are of paramount importance. To allow indemnification would dilute the deterrent impact of the antitrust laws. Only a realistic possibility of liability for damages will encourage compliance with the antitrust laws and will protect the public interest in preserving competition. Consequently, even if one joint tortfeasor bears greater responsibility for the wrongdoing, a person who violates the antitrust statutes should not be entitled to full indemnification from the more culpable third party.[9]

▇ The only case cited by National as direct support of its position is *Wilshire Oil*

---

**8.** The factors listed by Justice White in connection with whether an in pari delicto defense should be allowed in an antitrust action are "facts as to the relative responsibility for originating, negotiating, and implementing the scheme; evidence as to who might reasonably have been expected to benefit from the provision or conduct making the scheme illegal under § 1; proof of whether one party attempted to terminate the arrangement and encountered resistance or counter-measures from the other; facts showing who ultimately profited from or suffered from the arrangement." *Perma Life Mufflers v. International Parts Corp., supra,* 392 U.S. at 146–47, 88 S.Ct. at 1988 (White, J., concurring).

**9.** Furthermore, in its complaint Professional alleges that National violated section 2 of the Sherman Act by intentionally doing acts designed to exclude Professional as a competitor. Thus for Professional to prevail against National it will have to show that National was an

*Co. v. Riffe,* 409 F.2d 1277 (10th Cir. 1969). Without accepting or rejecting the Tenth Circuit's analysis in that case, we note that it is distinguishable from the present case. In *Wilshire,* the court allowed a suit for indemnification by a corporation against its officers who had allegedly caused the firm to commit antitrust violations which resulted in the corporation paying fines, penalties, and other expenditures. The court was careful to point out that the indemnification suit was based on a separate state claim for breach of a fiduciary duty and the court was not deciding the question of whether indemnification is generally available in antitrust actions. *Id.* at 1284. In the present case no separate cause of action by National against La Maur under state law has been alleged in connection with the antitrust violation. We caution, however, that the threshold question in a claim for indemnification under a separate state law theory is whether allowing it would be inconsistent with the purpose of the antitrust laws. Under no circumstance should indemnification be allowed where such allowance would be inconsistent with the purpose of the antitrust laws.

### III. Contribution and Indemnification Under Minnesota Law

■ Counts II and III of Professional's complaint involve pendent state claims. Count II alleged that National violated Minnesota's antitrust statutes, Minn.Stat. Ann. §§ 325.8014, 325.8015, and Count III alleged tortious interference with its business relationships.

Minnesota is one of a minority of states where the common law has developed to allow contribution among joint tortfeasors under certain circumstances. Under Minnesota law, National will be entitled to contribution if it can show on remand that it was not guilty of conscious wrongdoing, even if there has been a finding that a violation of the Minnesota antitrust statutes has been committed. *Cf. Skaja v. Andrews Hotel Co.,* 281 Minn. 417, 161 N.W.2d 657 (1968); *Farmers Ins. Exch. v. Village of Hewitt,* 274 Minn. 246, 143 N.W.2d 230, 235–39 (1966); *Hardware Mut. Cas. Co. v. Danberry,* 234 Minn. 391, 48 N.W.2d 567, 570–72 (1951) (application of contribution in personal injury cases). *See also* W. Prosser, Law of Torts § 50, at 306–08 & n. 68 (4th ed. 1971).

National also argues that it has stated a claim for indemnification under Count III, tortious interference with business relationships. In Minnesota, the leading case on indemnification is *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960).[10] In *Hendrickson* the court listed several situations in which indemnity is appropriate, two of which are relevant here:

(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

(3) Where the one seeking indemnity has incurred liability because of a breach

intentional wrongdoer. Thus, the sound reasoning of the security cases which deny indemnity to tortfeasors who have committed a wrong graver than ordinary negligence is equally applicable here. These cases have held that where a party has been found guilty of misconduct in violation of the public interest as embodied in the securities laws, it would offend public policy to allow indemnification. *See, e. g., Alexander & Baldwin, Inc. v. Peat, Marwick, Mitchell & Co., supra,* 385 F.Supp. at 238–39; *Herzfield v. Laventhol, Krekstein, Horwath & Horwath, supra,* 378 F.Supp. at 135; *Globus v. Law Research Serv., Inc.,* 287 F.Supp. 188, 199 (S.D.N.Y.1968), *aff'd in part, rev'd in part,* 418 F.2d 1276 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). *See also Odette v. Shearson, Hammill & Co., supra,*

394 F.Supp. at 954–57, *and Gould v. American-Hawaiian Steamship Co., supra,* 387 F.Supp. at 166–68, where the courts held that indemnification was not available even if the security violation was merely negligent. National should not be permitted to secure indemnity on a theory inconsistent with the theory on which it is ultimately held liable, *i. e.,* that it was secondarily liable only because of La Maur's wrongdoing.

**10.** *See also Bjerk v. Universal Eng'r Corp.,* 552 F.2d 1314, 1318–19 (8th Cir. 1977), *citing Lambertson v. Cincinnati Corp.,* 257 N.W.2d 679 (Minn.1977), for latest application of *Hendrickson.*

of duty owed to him by the one sought to be charged.

*Id.* at 848 (footnotes omitted).

■ With regard to Count III, National, in its third-party complaint, alleged that if it is found liable it will be "by action at the direction, in the interest of, and in reliance upon" La Maur; that La Maur had a duty to reveal to National the nature and extent of the business relationship between La Maur and Professional that might be interfered with by granting National an exclusive dealership; and that La Maur breached that duty. Since National may demonstrate that it falls within one of the exceptions to the no indemnification rule listed in *Hendrickson v. Minnesota Power & Light Co., supra,* the district court acted prematurely in dismissing National's claim under Minnesota law for indemnification under Count III.

The issue, whether if sufficient evidence is presented by Professional to hold National liable under Count III, such evidence will also be sufficient to preclude National from receiving indemnification from La Maur under Minnesota law, is not free from doubt. Since the case must be remanded on other grounds, we believe that the best course is to have this determination made in the first instance by the district court after more complete factual development.

*IV. Conclusion*

As we have indicated, this case is before us on appeal from the grant of a motion to dismiss. We conclude that it cannot be said beyond doubt at this stage of the proceedings that National can prove no set of facts in support of its claim for contribution under the federal antitrust laws, and for contribution or indemnification under Minnesota law. We affirm the dismissal of National's claim for indemnification under the federal antitrust laws.

Affirmed in part; reversed in part, and remanded for further proceedings not inconsistent with this opinion.

HANSON, Senior District Judge, dissenting in part.

I respectfully dissent from the holding in Part I of the majority's opinion permitting contribution among joint tortfeasors in an antitrust action. I concur in the result reached in Part II of the opinion and in the Court's reasoning to the extent it is not inconsistent with my views expressed below concerning the issue of contribution. In view of the Court's holdings in Part I and Part II, I concur in the result reached in Part III of the majority opinion and in the judgment, but with the understanding that the district court retains discretion to dismiss pendent state claims.

Because I discern no compelling reason to allow contribution in antitrust causes, and strongly suspect that antitrust policy may be adversely affected by it, I would affirm the district court's dismissal of National's claim for contribution from La Maur under federal antitrust law.

As an initial observation, this cause of action is an inopportune one in which to fashion a broad rule allowing contribution among joint tortfeasors, in an antitrust action. The only violation of federal antitrust law alleged by Professional is found in Count I of its complaint. That count alleges a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Section 2 proscribes monopolization, attempts to achieve a monopoly, and conspiracies to monopolize; and provides criminal penalties for those who violate its provisions. Under Section 4 of the Clayton Act, 15 U.S.C. § 15, a plaintiff such as Professional may recover treble damages for a Section 2 violation. The Court notes that under the allegations in Professional's complaint Professional will have to show that National was an intentional wrongdoer in order to prevail. *ante* at 1186–1187 n. 9. This is clearly correct, for the substance of Professional's complaint as I read it is that National's acts were pursuant to an attempt or conspiracy to monopolize the sale of wholesale beauty supplies in Minnesota. Intent is an essential element of the proof of a Section 2 attempt or conspiracy to monopolize. *See*

*e. g., United States v. Griffith*, 334 U.S. 100, 105, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail*, 578 F.2d 1256, 1262 (8th Cir. 1978); *United States v. Empire Gas Corp.*, 537 F.2d 296, 298–99 (8th Cir. 1976), *cert. denied*, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977); *International Railways of Central America v. United Brands Co.*, 532 F.2d 231, 239 (2d Cir.), *cert. denied*, 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976). If National is found liable to Professional, National will have been found to have conspired or committed an unlawful attempt to monopolize trade with "an intent to control prices or restrict competition unreasonably." *United States v. Empire Gas Corp., supra* at 302. *See United States v. DuPont & Co.*, 351 U.S. 377, 389, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

If found to be an antitrust violator under these circumstances, I believe that National is in a poor position to complain of any unfairness in being forced to assume the burden of restitution for the loss occasioned by its intentional wrongdoing, and it is in even worse position to complain about being penalized to the full extent of the treble damages allowed to a plaintiff by the Clayton Act. At least since Lord Kenyon's opinion in *Merryweather v. Nixan*, 8 Term.Rep. 186, 101 Eng.Rep. 1337 (K.B.1799), the common law has not allowed contribution in favor of an intentional wrongdoer on the theory that intentional wrongdoing is deterred by refusing to invoke equity to diminish the burden of liability otherwise incurred. *See Wright v. Haskins*, 260 N.W.2d 536, 538–39 (Iowa 1977). Whatever trend may exist in favor of contribution among nonintentional tortfeasors, the rule against contribution as between intentional wrongdoers is still generally adhered to. *See* W. Prosser, Law of Torts § 50, at 308 (4th ed. 1971).

With respect to Section 2 conspirators, the majority's partial reliance on trends in contribution law and equitable principles is misplaced.

I realize, however, that allegiance to common law rules cannot be allowed to under-

mine the purposes of the antitrust laws. *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138–39, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). In making the decision whether contribution is to be permitted or rejected in antitrust actions, the primary inquiry must be which course best furthers the public policy in favor of competition, or least detracts from it. *Id.* at 139, 88 S.Ct. 1981. The majority concludes that "[t]o deny contribution would be to dilute the deterrent effect of the antitrust laws, since a participant in an antitrust violation could escape all responsibility for its wrongdoing." *ante*, at 1185. I am not convinced that this is so. First, the likelihood that a participant may escape responsibility for his antitrust violations is at best a speculative concern (particularly in non-class actions) since in any given case there may be any number of other potential plaintiffs who were damaged by the particular restraint of trade or monopoly in which the prospective third-party defendant has been a participant. Moreover, as the majority candidly observes, the question of deterrence "cuts both ways," and it could well be argued that potential antitrust violators would be more likely to refrain from anticompetitive activities if they know that any injured party may impose the full burden of a treble damage recovery on them even though, for instance, the violator played a relatively minor part in a conspiracy to monopolize. *See El Camino Glass v. Sunglo Glass Co.*, [1977–1] Trade Reg.Rep. (CCH) ¶ 61,533 (N.D.Cal.1976), Or, inversely, the possibility of dissipating the impact of a treble damage award among antitrust co-conspirators may actually encourage anticompetitive activity. To me the arguments on either side of the deterrence question are inconclusive and as a result I find deterrence of potential violators insufficient as a basis on which to predicate a new rule permitting contribution.

In other respects, however, such a rule presents a substantial risk that antitrust lawsuits may become more difficult for trial courts to manage and, more importantly, the net result may be to deter private plaintiffs of relatively limited means from bring-

ing or maintaining a meritorious suit. Of particular concern in my mind is the potential for confusion, delay, and complexity inherent in permitting antitrust defendants a right to implead other alleged antitrust violators who may distort the litigation because of their size, nature of involvement, or position in the marketplace. It is not difficult to conceive of many circumstances in which the original plaintiff may simply be overwhelmed by embroilment in a lawsuit of a scope and size it never contemplated and is ill-equipped to handle. *See Sabre Shipping Corp. v. American President Lines,* 298 F.Supp. 1339, 1346 (S.D.N.Y. 1969). Aware that litigation may spiral out of their control, it is foreseeable that some plaintiffs will decide to forego a legitimate cause of action. Though district courts have the power to superintend complex litigation, the multiplication of issues and parties remains to be grappled with, and the chilling effect on the incentive to bring or pursue a lawsuit is unlikely to be diminished by the mere possibility of the favorable uses of district court discretion.

To a substantial extent, the enforcement of public antitrust policy depends on the attractiveness of litigation to private attorneys general. *See Hawaii v. Standard Oil of California,* 405 U.S. 251, 262, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). Mindful of this, the Supreme Court has recently shown itself to be sensitive to the danger of complicating issues in antitrust litigation to the point where a reduction in the incentive to sue is likely to result. *See Illinois Brick Co. v. Illinois,* 431 U.S. 720, 745–46, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Before formulating a rule which permits additional parties and issues to be joined in an antitrust case, we should be sure that we do not thereby counterbalance the motivation to sue provided by the treble damage award.

In any event, as the examples of the Antitrust Improvement Act of 1976, 15 U.S. C.A. §§ 15c–15h (Supp.1978), and the contribution sections of the Security Acts of 1933 and 1934 show, there is ample precedent for statutorily expanding the scope of antitrust litigation to include a right to seek contribution should Congress choose to do so.

Congress has never acted despite the fact that those courts which have dealt with the issue have held against contribution, and despite the fact that the issue of contribution would appear to be fairly obvious. In view of the implications with respect to the effectiveness of antitrust law, and with no strong policy reason in favor of contribution, I believe this is an appropriate instance to await congressional directive without risk of abdicating judicial function.