**In re YARN PROCESSING PATENT VALIDITY LITIGATION.**

MDL No. 82.

United States District Court,
S. D. Florida.

Apr. 25, 1979.

C. Reed Guthridge, Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., for Leesona Corp.

Charles B. Park, III, Bell, Seltzer, Park & Gibson, Charlotte, N. C., for Barmag Barmer Maschinefabrik AG and American Barmag Corp.

James L. Armstrong, III and Hugh J. Turner, Jr., Smathers & Thompson, Miami, Fla., for Lex Tex.

MEMORANDUM OPINION AND ORDER

ATKINS, Chief Judge.

The issue presently before the Court is whether the defendant machinery manufacturers may take advantage of this Court's earlier grant of summary judgment in favor of other parties in this action, precluding Lex Tex from enforcing its patents for misuse in the absence of a finding of purge. The misuse and resultant unenforceability was found by this Court and affirmed by the Fifth Circuit on appeal. *In re Yarn Processing Patent Validity Litigation*, 398 F.Supp. 31 (S.D.Fla.1975), aff'd 541 F.2d 1127 (5th Cir. 1976), cert. denied, 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977).

After this ruling by the Fifth Circuit, Lex Tex brought another round of infringement actions against various yarn producing throwsters. The cases were consolidated and transferred to this Court under 28 U.S.C. § 1407 for pretrial proceedings. The throwsters moved for summary judgment based on collateral estoppel from the previous ruling of misuse. This Court in an Order dated August 24, 1978, granted that motion in part, holding that plaintiff Lex Tex was estopped from re-litigating the misuse finding and thus, from enforcing its patents 3,091,912, 3,077,724 and 3,472,011 until a purge has been found.

These three machinery manufacturers, Barmag Barmer Maschinefabrik, AG, American Barmag Corporation, and Leesona Corporation were not parties to that motion. This Court now considers granting this relief *sua sponte*.

Lex Tex opposes this Court's granting of such relief. It argues that misuse is an equitable doctrine and as such should not be applicable to a participant in the misuse under the doctrine of *in pari delicto*. Lex

Tex asserts that equitable defenses such as unclean hands should not be used to favor one who benefited from the arrangement found illegal by the Court of Appeals.

## I.

In affirming this Court's finding of misuse, the Court of Appeals held that agreements made by the patent holder Lex Tex with each of the machinery manufacturers, which included a paragraph (5) obligating the patentee to pay royalties to them, violated the antitrust laws. The illegal provision stated that Lex Tex would pay each a percentage of the royalty received from double-heater machines sold by the manufacturer and licensed by Lex Tex. The court found this set a higher price for double-heater machinery and thus the patents were misused and unenforceable. *In re Yarn Processing Patent Validity Litigation,* 541 F.2d 1127 (5th Cir. 1976), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977).

This Court and numerous others has recognized patent misuse as an equitable defense to patent enforcement and a branch of the doctrine of unclean hands. *In re Yarn Processing Patent Validity Litigation,* 472 F.Supp. 170 (S.D.Fla.1979). However, as an equitable defense, this Court should not apply the doctrine blindly. Many recent cases have allowed varying applications of the *in pari delicto* defense or similar doctrines in antitrust cases despite the Supreme Court's warning in *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982

(1968), that it was inappropriate to invoke "broad common law barriers to relief where a private suit serves important public purposes." *Id.* 392 U.S. at 138, 88 S.Ct. at 1984. *See Duplan Corporation v. Deering Milliken,* 594 F.2d 979 (4th Cir. 1979); *Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.,* 594 F.2d 1179 (8th Cir. 1979); *Greene v. General Foods Corp.,* 517 F.2d 635 (5th Cir.), *cert. denied,* 424 U.S. 942, 96 S.Ct. 1409, 47 L.Ed.2d 348 (1975).[1]

In the present case this Court is faced with the necessity of balancing the varying public policies involved in permitting the assertion of this defense. In *Perma Life,* the Supreme Court emphasized "the public interest and statutory aim of deterring antitrust violations and enforcing the antitrust laws." *Professional Beauty Supplies, Inc. v. National Beauty Supply, Inc.,* 594 F.2d at 1186 (8th Cir. 1979). The Court held in *Perma Life* that *in pari delicto* should not constitute a defense to a private antitrust action since the application of that defense would undermine the antitrust laws. 392 U.S. at 138–40, 88 S.Ct. 1981.

Also at stake in the present action is a strong public interest in restraining a patent holder from exceeding the bounds of his publically granted monopoly. *Morton Salt Co. v. G. S. Suppiger Co.,* 314 U.S. 488, 491–93, 62 S.Ct. 402, 86 L.Ed. 363 (1942); *Preformed Line Products Co. v. Fanner Mfg. Co.,* 328 F.2d 265, 279 (6th Cir.), *cert. denied,* 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964). In none of the cases cited by Lex Tex was the court faced with these two strong public policies.

---

1. In *Greene,* the plaintiff was a small businessman who was coerced or acquiesced in a pattern of conduct that violated the antitrust laws. The Fifth Circuit stated that under the circumstances "[w]e have no occasion here to consider to what extent the 'in pari delicto' doctrine will continue to function in private antitrust litigation . . . ." *Id.* at 646. The court later stated:

"Even if we accept General Foods' argument that *in pari delicto* and closely related equitable defenses such as consent and unclean hands are still viable after *Perma Life*— an argument we seriously question—the record shows a great disparity between the plaintiff and the defendant both in terms of responsi-

bility for establishing the system alleged to violate the antitrust laws and the benefits conferred by that system." *Id.* at 646–47. In *Professional Beauty Supply,* the Eighth Circuit stated that despite the *Perma Life* Court's caution against common law doctrines such as *in pari delicto* functioning to prevent recovery in antitrust cases:

"We are convinced that the result of automatically prohibiting contribution among antitrust defendants in all circumstances would be to allow a significant number of antitrust violators to escape liability for their wrong doing and thereby undermine the policy of the antitrust laws." 594 F.2d at 1185.

## II.

There is no question that as parties to the misuse, the machinery manufacturers had some expectation of benefit under the illegal paragraph either through direct or future remuneration, or simply by keeping up with their competitors' ability to pass the rebates back to their customers. However, to characterize their part in the misuse as in any way equivalent to the patentee who misuses his patent is to ignore his privileged position under the patent laws. The grant of this "special privilege of patent monopoly" carries with it a duty to the public interest. *Morton Salt Co., supra,* 314 U.S. at 492, 62 S.Ct. 402.

On balance, this Court finds that in the present case the public policy against permitting one to misuse his patent and the policy disallowing the use of the *in pari delicto* defense under the antitrust laws outweighs any interest cited by Lex Tex in penalizing the machinery manufacturers for their relative fault.[2] By allowing Lex Tex to enforce its patents against the machinery manufacturers, this Court would allow the patent holder to enforce its patents already found misused and unenforceable by the Fifth Circuit. Permitting the patent holder to assert this privilege after a finding of misuse would violate the expressed policy underlying both the patent and antitrust laws and do irreparable harm to the public interest.

---

**2.** This Court agrees with the Eighth Circuit's view in *Professional Beauty Supply,* that there may be some circumstances in which *in pari delicto* and related defenses may still be applicable after *Perma Life. See Perma Life, supra,* 392 U.S. at 142–47, 88 S.Ct. 1981 (White J., concurring), and footnote 1 *supra.*